UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 06-61840-CIV-SELTZER

TROY BROWN, GENERAL HOLDINGS
CO., and ATTAWAY SERVICES, INC.,

    Plaintiffs,

vs.

JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRO-STEEL
SERVICES, INC., JOHN. R. TOSCANO,
INC., and DAVID MEAUX,

    Defendants.

JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRO-STEEL
SERVICES, INC. and JOHN. R. TOSCANO,
INC.

    Counterplaintiffs/Cross-Plaintiffs,

vs.

TROY BROWN, GENERAL HOLDINGS
CO., ATTAWAY SERVICES, INC., and
DAVID MEAUX,

    Counterdefendants/Cross-Defendants.

_____/

**DEFENDANTS JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRO-STEEL SERVICES, INC. AND
JOHN R. TOSCANO INC.'S MOTION FOR BIFURCATION**

Pursuant to FED. R. CIV. P. 42, Defendants/Counterplaintiffs John Toscano ("Toscano"), Enviro-Steel Corporation ("Enviro-Steel"), Enviro-Steel Services, Inc. ("Service, Inc.") and John R. Toscano, Inc. ("Toscano, Inc.") (collectively, "Defendants") hereby respectfully move this

{NY035350;1}

Court to bifurcate this case in order for the central issue of patent infringement to be separately and initially tried.

In the course of a recent hearing on May 15, 2008, this Court recognized that the scope of this case has become unwieldy – there are now 7 claims (counts), 18 counterclaims, and 9 cross-claims spanning a variety of subjects. The Court encouraged the parties to develop a proposal to bifurcate this case to allow for its efficient adjudication and resolution. Defendants' proposed bifurcation will accomplish these goals. It will streamline the action, prevent the presentation of volumes of unnecessary evidence, and promote settlement of the entire case by mandating that the potentially dispositive question (*i.e.*, whether the relevant patent has, in fact, been infringed) be answered first.

## FACTUAL BACKGROUND

For its first year, this case primarily involved claims for declaratory relief with respect to patent ownership and some garden-variety common law claims of fraud, tortious interference, breach of fiduciary duty, and unjust enrichment. This case progressed to a whole new level with the issuance of a patent (the "'676 Patent") and, subsequently, Plaintiffs' addition of a claim for patent infringement in their Amended Complaint (D.E. 123). Defendants then filed their Second Amended Counterclaims in which they asserted, *inter alia*, a counterclaim for declaratory relief as to non-infringement of the '676 Patent.

Defendants have asserted that they manufacture, use, offer for sale and/or sell a system known as "Steel Shield." Defendants believe that they are not making, using, offering for sale or selling a product which infringes the '676 Patent because the '676 Patent requires, *inter alia*, that a "tank divider plate is gas permeably attached to the floor surface on another side of the tank divider plate." Plaintiffs, in their patent infringement claim, allege the contrary. Plaintiffs also

allege that Defendants have infringed the '676 Patent willfully and maliciously, and thus seek treble damages.

The Court's most recent scheduling order (D.E. 118 – 2/14/08) reflects the primacy of the issue of patent infringement in this case. The order specifically calls for the provision of claim charts (and responses thereto), responses to interrogatories on the issue of infringement, a claims construction conference, a joint claims construction statement, claims construction briefs, and a Rule 16 conference with respect to a claims construction hearing as the first of the well-established two-step process for determining infringement. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The parties have already performed numerous steps of this infringement procedure.

## ARGUMENT

### I. BIFURCATION OF THE INFRINGEMENT ISSUE IS APPROPRIATE

#### A. The Bifurcation Standard.

"Under [FED. R. CIV. P.] Rule 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Gardco Mfg, Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987). *See also Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1301 (11th Cir. 2001) ("[Rule 42(b)] affords a district court discretion to order separate trials where such order would further convenience, avoid prejudice, or promote efficiency."); *Harrington v. Cleburne County Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001) (same).

When exercising their "broad discretion" to bifurcate issues, courts should consider a number of factors including convenience, prejudice, expedition, and economy. *Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. 607, 608 (N.D. Ga. 1989). Along these lines, the

Court should consider (1) whether the issues sought to be tried separately are significantly different; (2) whether they are to be tried by a jury or the court; (3) whether discovery has been directed to a single trial of all issues; (4) whether the evidence required for each issue is substantially different; (5) whether one party would gain an unfair advantage from separate trials; (6) whether a single trial on all of the issues would create the potential for jury bias or confusion; and (7) whether bifurcation would enhance or reduce the possibility of pre-trial settlement. *Id.*

Plaintiffs have suggested that this case should be bifurcated such that all patent claims should be tried first (versus all common law claims). However, that proposal contravenes the fact that "[b]ifurcation, while perhaps not routine, is nonetheless common in patent litigation." *Yamaha v. Bombardier, Inc.*, 2001 WL 501354, *3 (C.D. Cal. May 4, 2001). "In the context of patent cases, 'experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury.'" *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (citing Thomas L. Creel & Robert P. Taylor, *Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice*, 424 PLI/Pat 823, 826 (1995)). In addition to the inherent complexity of patent cases, the concerns of prejudice, expedition and judicial economy present in most patent cases also support bifurcation:

> In the normal case separate trial of issues is seldom required, but in a patent infringement suit considerations exist which suggest that efficient judicial administration would be served by separate trials on the issues of liability and damages. The trial of the damages question in such a suit is often difficult and expensive, while being easily severed from the trial of the questions of validity and infringement of the patent. A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties. Moreover, separate trial of the issue of liability may present counsel the opportunity to obtain final settlement of that issue or appeal without having reached the often time-consuming and difficult damages question.

*Smith v. Alyeska Pipeline Serv. Co.,* 538 F. Supp. 977, 982-83 (D. Del. 1982), *aff'd,* 758 F.2d 668 (Fed. Cir. 1984) (quotations omitted).

Numerous cases (including the seminal case of *Markman*) have been bifurcated in the exact manner requested here: infringement before validity and other issues. *See, e.g., Markman,* 52 F.3d at 1002 (noting the conduct of an "infringement trial (validity and damages were severed)"); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* 2006 WL 2435089, *2 (D. Del. Aug. 22, 2006) ("In complex patent cases, this Court and others have routinely bifurcated the issues of infringement and validity."); *Ciena Corp.,* 210 F.R.D. at 521 ("[T]he Court will conduct separate jury trials on the issues of this case in the following sequence: (1) infringement and willfulness; (2) invalidity; (3) damages. Phases (1) and (2) will be held before different juries, and Phase (3) will be held after any appeals of Phases (1) and (2)."); *Endress & Hauser, Inc. v. Hawk Measurement Systems Pty. Ltd.,* 892 F. Supp. 1107 (S.D. Ind. 1995) (conducting trial on infringement before validity); *C.R. Bard, Inc. v. M3 Sys., Inc.,* 1994 WL 362186 (N.D. Ill. July 11, 1994) (upholding severance of trial into four segments: (1) infringement; (2) validity; (3) antitrust claims; and (4) damages); *Troncoso v. Martin Archery, Inc.,* 127 F.R.D. 190 (E.D. Wash. 1989) (trifurcating action into (1) infringement, (2) validity and enforceability, and (3) damages).

Indeed, the then Chief Judge of the Federal Circuit commented:

> Without infringement, there is no case or controversy on the validity defense, and a patentee that has not carried its burden of proving infringement has no right or reason to remain in the trial court. If infringement be not proven, there is nothing at that point to defend against and no reason for a defendant's attempting to prove an invalidity defense. In an uncounted but substantial number of instances the case for infringement was doubtful at the outset and failed miserably at trial. Trial judges should, therefore, in every patent trial, consider whether a separate trial of the infringement issue "will be conducive to expedition and economy." Rule 42(b), Fed.R.Civ.P. Under the approach here suggested, that question will be often answerable in the affirmative.

*On Simplifying Patent Trials,* 116 F.R.D. 369, 377 (1987).

B.     **Bifurcation of This Action Is Proper for a Number of Reasons.**

The circumstances presented in this case strongly favor bifurcation of the issue of patent infringement.

1.     **The Infringement Issues Are Easily Severable.**

In deciding whether to bifurcate an action, courts typically consider whether the action is properly severable. Here, the issue of whether Defendants' product infringes on the '676 Patent is separate from the other patent-related issues.

a.     **Validity Issues Are Easily Severable from Infringement Issues.**

First, the issue of infringement is legally separate from the issue of the validity of the '676 Patent. Regardless of bifurcation, the Court first construes the patent claim as a matter of law[1], and then the fact finder compares the construed claim of the patent to the allegedly infringing device. *Markman*, 52 F.3d at 976. In other words, the facts and discovery focus on Defendants' product as to whether it infringes on the legally construed claim of the '676 Patent. This requires consideration of the ins and outs of Defendants' product, and does not require consideration of such issues as proper inventorship, prior art, obviousness, commercial success, or fraud on the U.S. Patent and Trademark Office, or anything else with respect to Plaintiffs' own product.

Indeed, the separability of the infringement issue is highlighted by the fact that it could entirely moot the need for a determination of invalidity. *See, e.g., Troncoso*, 127 F.R.D. at 191 ("If plaintiffs' patents are found not to have been infringed, no adjudication as to validity will be required.").[2]

---

[1]     The same patent claim construction applies to both the validity and infringement analyses.

[2]     This situation should be distinguished from the situation in *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993) where the Supreme Court criticized the prior practice of the Court of Appeals for the Federal Circuit in routinely *vacating* a lower court's determination of invalidity when affirming non-infringement. Nothing in *Cardinal* requires that the District Court consider validity or unenforceability after a non-infringement finding. *See Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459 (Fed. Cir. 1998).

{NY035350;1}

### b.     Damages Are a Separate Issue

Infringement is also separate from the issue of damages. *See Novopharm Limited v. Torpharm*, 181 F.R.D. 308, 310 (E.D.N.C. 1998) ("Patent cases are uniquely amenable to bifurcation because of the complex nature of the damages determination and the extensive discovery that is often necessary to prove the nature and extent of those damages."). Indeed, the former Fifth Circuit could "not think of an instance in a patent action where the damage issue is so interwoven with the other issues that it [could] not be submitted to a jury independently of the others without confusion and uncertainty, which would amount to a denial of a fair trial." *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964).

Here, the issue of infringement may require the jury to consider a large volume of technical information, including diagrams, schematics, engineering and product specifications, product brochures, models and exhibits, in order to determine whether Defendants' product infringes the '676 Patent. Not only is this evidence distinct from the evidence of invalidity (*e.g.*, prior art documents), this evidence is also distinct from the evidence that the jury would consider on damages, which would principally consist of documents evidencing the number of Defendants' products which were manufactured and sold, the cost of each such product, the revenue and profit generated from the sale of such product, market share, loss of profits (or reasonable royalty), and testimony from damages experts – all of which would need to be presented if infringement is not bifurcated.

### c.     Willfulness May Easily Be Bifurcated

The issue of willfulness is also separate from a predicate finding of infringement. "A determination regarding patent infringement does not require a detailed inquiry into the elements of willful infringement." *Princeton Biochemicals, Inc. v. Beckman Instruments*, 180 F.R.D. 254,

258 (D.N.J. 1997). *See also Wilden Pump & Eng'g Co. v. Pressed & Welded Prods. Co.*, 655 F.2d 984, 989 (9th Cir. 1981) ("In determining the question of infringement, the desire or intent to infringe a patent is irrelevant."); *Avia Group Int'l, Inc. v. Nike, Inc.*, 22 U.S.P.Q.2d 1475, 1477 (D. Ore. 1991) ("Because intent is irrelevant to a determination of patent infringement, there is no overlap concerning willfulness between the issue of liability and damages."). Infringement merely requires proof that the accused, without authority, makes, uses, sell, offers to sell, the patented invention. Conversely, willfulness requires proof of the accused's intent. *Princeton Biochemicals, Inc.*, 180 F.R.D. at 258.

Indeed, the witnesses – both lay and expert – who would testify as to infringement would most likely be separate from those who would testify on most other issues. Simply stated, there is no *required* discovery or evidentiary overlap and the issue of infringement is easily parsed into a separate proceeding.

### 2. Bifurcation Will Promote Convenience, Expedition and Economy.

As referenced above, Rule 42(b) empowers a court to bifurcate a trial "to expedite and economize." FED. R. CIV. P. 42(b). Bifurcation makes particular sense in cases such as the instant case, where there is a very real possibility that no liability will be found to exist. If, indeed, there is a finding of non-infringement, then the parties and the Court are relieved of the need for preparing for and conducting a more involved trial. Gone is the need for witnesses and experts on validity, damages and willfulness, as well as the expenditure of money and resources relating to this discovery.[3] *See Troncoso*, 127 F.R.D. at 191 (finding that "separate adjudication of the infringement and validity issues is warranted by the significant economies that might be

---

[3] For this reason, discovery as to issues other than infringement should be stayed pending the outcome of a trial on infringement.

achieved if no infringement is shown"). Simply put, if a patent is not infringed, what reason is there to undergo a rigorous examination of its validity?

Indeed, as noted by Federal Circuit Judge Markey:

> If it be determined that a patentee has failed to carry its burden of proving infringement, it is at least difficult to posit a basis for wasting judicial resources and the parties' money in fighting over the validity of a patent no one is infringing. Hence it would greatly reduce the complexity of all patent trials, and would greatly reduce the cost of some, if the infringement issue were tried first and a decision were made on whether the patentee carried its burden on that issue, all before trial began on the invalidity defense. . . .
>
> It would be surprising, moreover, if many defendants, having at that point won the case and convinced infringement was not proven, would press the trial judge to proceed with an unnecessary trial on their now redundant invalidity defense. Nor would the patentee, which at that point no longer has a case, appear entitled to insist on the expenditure of judicial resources and the parties' money in a trial on the validity of its non-infringed patent.

116 F.R.D. at 378, 380.

Even if infringement is found and a trial on some other issues is not eliminated, bifurcation will, nonetheless, still result in convenience, expedition and economy. While some overlap in terms of witnesses may not be avoidable, "the burden of speculative costs and extra time that such testimony might require is outweighed by the potential savings that trifurcation offers all involved." *Troncoso*, 127 F.R.D. at 192.

Consequently, a trial on infringement will *at a minimum* serve to limit the issues that would need to be tried during a second trial on validity, damages and willfulness.[4] In short, having the parties and the Court first focus their time and resources on infringement will enable this case to proceed in the most expeditious and economical manner.

---

[4] Moreover, after the infringement determination, the parties could dismiss all other claims, without prejudice, on mutually agreeable terms, thus rendering the claim construction and infringement determinations final and immediately appealable. The potential for finality on patent claim construction before considering patent validity, unenforceability and damages would reduce the risk of a need for a second trial if the appellate court disagrees with this court on claim construction.

{NY035350;1}

9

### 3. Bifurcating This Action Will Simplify Discovery and Conserve Resources.

Bifurcating this action will also simplify discovery and could lead to a conservation of potentially vast resources. Infringement could be dispositive, and thus the parties (and the Court) may not have to incur the substantial burden and expense of conducting separate discovery involving prior art, public use, commercial success, customers, prices, valuations, and additional expert witnesses – all which would have to be handled at the same time under Plaintiffs' suggested bifurcation.

In other words, the remainder of the patent issues would be erased by a finding of non-infringement. *See, e.g., Novopharm*, 181 F.R.D. at 312 (noting that bifurcating the action and staying discovery not only saves expense and time, but protects sensitive information if no liability is found); *Princeton Biochemicals, Inc.*, 180 F.R.D. at 254 (same); *Industrias Metalicas Marva v. Lausell*, 172 F.R.D. 1, 4 (D.P.R. 1997) (simplification of discovery is the "major benefit" of bifurcation); *John Hopkins University v. Cellpro,* 160 F.R.D. 30, 34-35 (D. Del. 1995). The Court should grant the proposed bifurcation to so streamline otherwise vast discovery to be conducted in this case.[5]

### 4. Bifurcation Will Prevent Juror Confusion.

Jury bias or confusion is another important factor in the decision to bifurcate. *See Kimberly-Clark Co.*, 131 F.R.D. at 609. Due to the complexity of the issues involved and the confusion that will likely result should all patent issues be presented to a jury at once (as suggested by Plaintiffs), this case is ripe for bifurcation. *See, e.g., Shepard v. Int'l Business*

---

[5] Plaintiffs may argue that certain issues overlap between infringement and validity, and therefore bifurcation would cause a duplication of efforts. Such arguments are baseless. First, although claim construction applies to both validity and infringement, that issue is a matter of law for the Court with its one determination made applicable to both issues. Moreover, although the volume of sales of Defendants' product may be relevant to the issue of obviousness (*i.e.* validity) in terms of commercial success "of the invention" *see Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966), Defendants' sales volume is irrelevant to validity if Defendants' product does not infringe the '676 Patent. Accordingly, it makes sense to separate these two issues.

*Machines Corp.,* 45 F.R.D. 536, 537 (S.D.N.Y. 1968) (a single patent trial "would only clutter the record and tend to confuse the jury").

As referenced above, a trial on both infringement and validity would require the jury to consider a large volume of technical information, including diagrams, schematics, engineering and product specifications, product brochures, models and exhibits on two major but different issues – validity and infringement. The jury would be on overload long before it even gets to the issue of willfulness, much less the complex damages evidence. With bifurcation, the jury (and this Court) could assess the infringing nature of Defendants' product separate and apart from the various issues pertaining to invalidity – and potentially avoid ever having to address those issues at all.

In sum, bifurcation will reduce any unnecessary confusion for a jury already faced with deciphering the structure and operation of the accused technology. As such, the complex yet discrete nature of the infringement issues, as well as the potential jury confusion, warrant bifurcation.

### 5. Bifurcation Avoids Prejudice.

Bifurcating this action will not prejudice any party. Indeed, Plaintiffs will be saved from substantial prejudice because the issue of invalidity subjects their patent counsel to disqualification. Co-counsel of record for Plaintiff is John Carey of the law firm Carey Rodriguez Greenberg & Paul. Another member of that firm, Steven Greenberg, has been Plaintiffs' patent counsel for the filing and prosecution of the related patent applications. Mr. Greenberg was at the heart of these filings and prosecutions, and therefore is a material fact witness on the invalidity and enforceability of the patent issued therefrom. *See, e.g.,* Defendants' Second Amended Counterclaims ¶¶ 103-04, 111-12, 114, 126, 172-77, 184-86. If this action is not bifurcated,

Defendants would have to immediately move to disqualify the Carey Rodriguez firm because they will be fact witnesses on validity, inequitable conduct and inventorship issues. On the other hand, bifurcation will save Plaintiffs (at least for now) from this situation and all parties and this Court from the time and expense of such a motion.

Moreover, bifurcating this action will save Defendants from various forms of prejudice. First, bifurcation will enable Defendants to protect their confidential business information, such as sales, pricing and marketing information, until such time as the financial and other proprietary information becomes relevant. *See Princeton Biochemicals, Inc.*, 180 F.R.D. at 259 (noting that litigating the damages issues would unfairly prejudice the defendant, given that it has had commercial success and, thus, will be forced to produce a heavy volume of documents that may ultimately prove unnecessary); *Industrias Metalicas Marva*, 172 F.R.D. at 2-3 (staying discovery and trial on damages to protect sensitive financial and marketing information, where one competitor was seeking damages from another).

Defendants may also be severely prejudiced by the unnecessary disclosure of attorney-client privileged information. Specifically, it would be particularly prejudicial to Defendants' preparation of their defense on infringement if they were compelled to turn over to Plaintiffs the legal opinions supporting their defense on willfulness. As stated by the Federal Circuit:

> Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court in camera, reveal that the defendant is indeed confronted with this dilemma.

*Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991).

Moreover, Plaintiffs' allegations of patent infringement adversely affect Defendants because Defendants are unsure of their rights. Until the Court makes a determination of infringement, there will always be some doubt, however slight, as to Defendants right to import, make, use, sell and/or offer to sell their product. Therefore, the longer delay until a ruling on infringement, the more prejudice Defendants will sustain.

### 6. Bifurcation Enhances the Possibility of Pretrial Settlement.

In addition to the more general factors described in Rule 42(b), several courts have noted that the possibility of pretrial settlement is an important consideration in deciding the question of bifurcation. *See, e.g., Kimberly-Clark Co*, 131 F.R.D. at 609. In the present case, the issue of infringement would be particularly conducive to obtaining final settlement without having to reach the time-consuming, complex questions of invalidity and damages. After the first step, claim construction under *Markman*, the parties will have a better understanding of the potential for liability and a settlement may well follow. Subsequently, a finding of non-infringement could resolve all other patent issues (and encourage settlement of the remaining common law claims). Therefore, while settlement is never guaranteed in advance, a trial on all other issues would likely subside altogether, resulting in a substantial savings of resources for both the parties and the Court.

For the foregoing reasons, Defendants respectfully request that this Court bifurcate the issue of infringement.

### II.   DISCOVERY BEYOND INFRINGEMENT SHOULD BE STAYED.

The law is well-established that a district court has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation. *Vivid Techs., Inc. v. American Science & Eng'g, Inc.*, 200

{NY035350;1}

13

F.3d 795, 803-804 (Fed. Cir. 1999); *Moore v. Potter*, 141 Fed. Appx. 803, 807 (11th Cir. 2005) (the district court has "broad discretion" over pre-trial matters such as discovery and scheduling); *National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 609 (11th Cir. 1984) (same).

When a particular issue may be dispositive, a court may stay discovery concerning other issues until the critical issue is resolved. *Ellingson Timber Co. v. Great N. R. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) ("One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues."). Furthermore, when separate trials are ordered, a court may stay discovery of the issues to be tried in the second trial pending resolution of the first action. *See, e.g., Princeton Biochemicals*, 180 F.R.D. at 260-61 (staying discovery in patent case on bifurcated issues of damages and willfulness); *Eaton Corp. v. Auburn Gear, Inc.*, 8 U.S.P.Q.2d at 1373 (since the liability issue may be dispositive, the court limits discovery to those issues initially); *Slater Elec., Inc. v. Indian Head, Inc.*, 223 U.S.P.Q. 729, 732, 1983 WL 52356 (S.D.N.Y. 1983) (same).

Moreover, a stay of discovery on the issues other than infringement is appropriate in the present case due to the magnitude of the discovery thereon. There is a distinct set of evidence relevant to infringement. In contrast, the damages, willfulness and validity issues in this case (as well as the non-patent issues) will require extensive additional discovery, including testimony from additional fact and expert witnesses and the potential need for disclosure of otherwise privileged information. *Princeton Biochemicals, Inc.*, 180 F.R.D. at 261 (finding that "this Court finds no reason to order defendant to expend tremendous efforts and funds to produce volumes of documents concerning issues of damages and willfulness prior to a finding of liability.").

Given the potential for massive unnecessary expense and efforts, Defendants respectfully request that this Court grant Defendants' motion and stay discovery on all issues other than infringement pending the determination of that bifurcated issue.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant this motion, bifurcate the issue of patent infringement, stay discovery on all other issues, and grant Defendants such other relief deemed necessary or proper.

## S.D. FLA. L.R. 7.1.A.3 CERTIFICATION

Undersigned counsel hereby certifies that it has discussed the relief sought herein with Plaintiffs' counsel and Defendant David Meaux's counsel. Plaintiffs oppose this motion. Undersigned counsel placed multiple telephone calls to Defendant Meaux's counsel during business hours on July 28, 2008, and received no response prior to the filing of this motion.

Respectfully submitted,

**AKERMAN SENTERFITT**

One Southeast Third Avenue - 25th Floor
Miami, Florida 33131-1714
Tel: 305-374-5600
Fax: 305-374-5095

By: s/Jeffrey T. Cook
   Merrick L. Gross, FBN 716677
   merrick.gross@akerman.com
   Jeffrey T. Cook, FBN 0647578
   jeffrey.cook@akerman.com
   James A. Bombulie, FBN 0025749
   james.bombulie@akerman.com

>Jerold I. Schneider, FBN 0026975
>Akerman Senterfitt
>222 Lakeview Avenue, Suite 400
>West Palm Beach, FL 33401
>Phone (561) 653-5000
>Fax  (561-659-6313
>jerold.schneider@akerman.com
>
>*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on July 28, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>s/Jeffrey T. Cook
>Jeffrey T. Cook

{NY035350;1}

16

## SERVICE LIST

### CASE NO: 06-61840-CIV-SELTZER

Dennis Nowak, Esq.
Tew Cardenas, LLP
*Co-Counsel for Plaintiffs*
1441 Brickell Avenue
15th Floor
Miami, FL 33131-3407

Stephen R. Verbit, P.A.
*Counsel for Defendant Meaux*
9900 Stirling Road
Ste 200A
Cooper City, FL 33024

John C. Carey, Esq.
Carey, Rodriguez, Greenberg and Paul, LLP
*Co-Counsel for Plaintiffs*
1395 Brickell Avenue
Suite 700
Miami, FL 33131