IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 06-61840 CIV-SELTZER

TROY BROWN, GENERAL HOLDINGS
CO., and ATTAWAY SERVICES, INC.,

        Plaintiffs,

v.

JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRO-STEEL
SERVICES, INC., JOHN R. TOSCANO,
INC., and DAVID MEAUX,

        Defendants.
_____/

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR BIFURCATION

Plaintiffs/Counter-Defendants Attaway Services, Inc. ("Attaway"), Troy Brown ("Brown") and General Holdings Co. ("General Holdings") (collectively herein "Plaintiffs") hereby file their Memorandum in Opposition to Defendants' Motion for Bifurcation, as follows:

Defendants John Toscano, Enviro-Steel Corporation, Enviro-Steel Services, Inc., and John R. Toscano, Inc. ("Defendants") have moved to bifurcate this case, by which they mean to segregate the lone issue of patent infringement from every other issue in this case, to be discovered and tried to a jury, separately and initially.[1] Defendants have also requested that all discovery unrelated to the issue of patent infringement by stayed. Although not at all clear from

---

[1] On page 2 of the Motion for Bifurcation, Defendants present it as being in response to the Court raising the issue of bifurcation at the hearing on May 15, 2008. Notwithstanding the characterization of the Court's comments in favor of their Motion (the undersigned recalls the Court's comments as neutral), the fact is that, after consulting with their patent lawyers (as reported by Defendants' trial counsel to the undersigned), Defendants initially took the position that bifurcation should not be ordered because the case was relatively simple and the proof of the various components of the case would be factually interdependent. Defendants' change of heart therefore seems more tactical than anything else.

remaining issues not disposed of by the trial on patent infringement would then be subsequently discovered (to the extent necessary) and then tried to a second jury. This second jury trial would encompass, presumably, all of Defendants' remaining defenses to the patent infringement claim (assuming a finding of infringement) including invalidity (seventeenth and eighteenth defenses) and unenforceability (nineteenth defense) as well as the issues of willfulness and damages, and all of the parties' non-patent related claims.

Clearly, in the ordinary course, a single trial of liability and damages to a single jury is the norm. *Real v. Bunn-o-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000). Although a decision to segregate an issue for a separate trial, under Fed.R.Civ.P. 42, is left to theسound discretion of the district court, *Harrington v. Cleburne County Bd. Of Ed.*, 251 F.3d 935, 938 (11th Cir. 2001) and *The Johns Hopkins University v. CellPro*, 160 F.R.D. 30, 33 (D. Del. 1995), such an exercise of discretion is to be based on the facts and circumstances of each individual case, and bifurcation is the exception, not the rule. *Trading Technologies International, Inc. v. Espeed, Inc.*, 431 F.Supp.2d 834, 836 (N.D. Ill. 2006) (and cases cited); *Real v. Bunn-o-Matic Corp.*, 195 F.R.D. at 620; *Smith v. Alyeska Pipeline Service Co.*, 538 F.Supp. 977, 982 (D.C. Del. 1982) ("Motions to separate the issues of liability and damages are to be granted by the court on a case-by-case basis only when the separation will result in judicial economy and will not unduly prejudice any party."). Indeed, Rule 42 provides, in part, that a separate trial of claims or issues may be ordered for "convenience, to avoid prejudice, or to expedite and economize…" However, the party moving for the separate trial has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by a separate trial *Trading Technologies*, 431 F.Supp.2d at 837. ("The party seeking separate trials has the burden

of showing that judicial economy would be served and the balance of potential prejudice weighs in favor of bifurcation."); *Yamaha Hatsudoki Kabushik Kaisha v. Bombardier, Inc.*, 2001 WL 501354 *1 (C.D. Col. 2001) ("Bombadier has the burden to demonstrate that judicial economy would be promoted and that Yamaha will not suffer prejudice."), *Real v. Bunn-o-Matic Corp.*, 195 F.R.D. at 620.  As set forth in detail below, Defendants have not met their burden.

The major premises of the Motion for Bifurcation are fourfold: if Plaintiffs' patents are found not to have been infringed, Defendants postulate, (1) a subsequent determination of validity, enforceability, damages and willfulness will be avoided and settlement will be encouraged; (2) the parties and the Court will be spared the expense and time involved in a full trial on all issues; (3) juror confusion will be avoided; and (4) the proposed bifurcation of patent infringement will not cause, but rather will eliminate prejudice to the parties.  None of these propositions has been demonstrated by Defendants to be true, or even likely, in <u>this</u> case.

**<u>Bifurcation is the Exception</u>**

Defendants have cited many cases to make the point that bifurcation of issues in patent cases, while not routine, is common.  What the cases cited by Defendants actually show, is that bifurcation (usually only of liability and damages) is sometimes ordered in <u>complex</u> patent cases.  *See*,[2] *e.g.*, *Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. 607, 609 (N.D. Ga. 1989) ("This court agrees that the liability issues in this complex patent infringement case are separate and distinct from damage issues.") (cited at Motion for Bifurcation, page 3); *Yamaha v. Bombardier, Inc.*, 2001 WL 501354 *1-3 (C.D. Cal. May 4, 2001) (bifurcating a complex patent case alleging infringement of thirty patents into two phases:  liability, and if necessary, damages and willfulness) (cited at Motion for Bifurcation, page 4); *Princeton Biochemicals, Inc. v.*

---

[2] In order of their appearance in the Motion for Bifurcation.

3

*Beckman Instruments, Inc.*, 180 F.R.D. 254, 257-258 (D. N.J. 1997) (trial of complex patent case asserting forty claims of infringement bifurcated as to liability and damages) (cited at Motion for Bifurcation, pages 7-8); *Avia Group International, Inc. v. Nike, Inc.*, 22 U.S.P.Q. 2d 1475 (D. Ore. 1991) (separate trials on liability and damages ordered in patent case involving five patents and eight alleged infringing products) (cited in Motion for Bifurcation, page 8).

In two other cases cited by Defendants, bifurcation of liability and damages was ordered due to the complexity of the damage issues. *See, Smith v. Alyeska Pipeling Serv. Co.*, 538 F.Supp. 977, 983-984 (D.C. Del. 1982) (cited at Motion for Bifurcation, page 5) and *Novopharm Limited v. Torpharm, Inc.*, 181 F.R.D. 308, 311 (E.D.N.C. 1998) (cited at Motion for Bifurcation, page 7).

The handful of cases cited by Defendants ordering separate trials on the issues of infringement and validity either involve complex patent cases, such as *Ciena Corp. v. Corvis Corp*, 210 F.R.D. 519, 520-521 (D. Del. 2002) (patent case involving complex technology, five patents and numerous claims of those patents) (cited at Motion for Bifurcation, page 4), or which do not contain sufficient facts to determine why the decision to bifurcate was made. *See, Power Integrations, Inc. v. Fairchild Semiconductors Intn'l, Inc.* 2006 WL 2435089 (D. Del. Aug. 22, 2006) (indicating a complex case with multiple patents-in-suit but no other facts),[3] *Endress & Hauser, Inc. v. Hawk Measurement Systems Pty., Ltd.*, 892 F.Supp. 1107 (S.D. Ind. 1995) (order on invalidity defenses only), and *C.R. Bard, Inc. v. M3 Systems, Inc.*, 1994 WL 362186 *2 (N.D. Ill. July 11, 1994) (indicating a complex case but with no detail) (all cited at Motion for Bifurcation, page 5).

---

[3] This was an order on an untimely motion for reconsideration of a bifurcation order previously entered without objection, which likely accounts for the lack of detail and also diminishes its precedential value for this proposition.

4

The case of *Troncoso v. Martin Archery, Inc.*, 127 F.R.D. 190, (E.D. Wash. 1989) is cited at Motion for Bifurcation, page 5, to support the proposition of ordering three separate trials of infringement, validity and enforceability and damages. In fact, separate trials were not ordered at all. Rather, the court in *Troncoso*, 127 F.R.D. at 191 ordered a single trial but staged the presentation of evidence relevant to infringement and all other causes of action, defendants' affirmative defenses, and damages, in that order. Counsel were permitted to address all aspects of the action as if the trifurcated staging had not occurred. *Id.* Incidentally, this sequential staging of evidence on various issues in a single patent trial also was discussed as a possible mechanism to minimize any prejudice to the parties by a court denying a motion to bifurcate liability and damages in *Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 35-37 (D. Del. 1995) (cited at Motion for Bifurcation, page 10).

In short, the more complex the issues involved in one phase of a patent case or another, the more it is justified to try the case, or stage evidence as to those issues, separately. The question then is, what facts and circumstances particular to <u>this case</u> have Defendants articulated to meet their burden of demonstrating that the issues of infringement are so complicated that they should be tried separately and first? The answer is – none.

### Lack of Complexity and Juror Confusion

Although the Motion for Bifurcation is long on citing propositions and legal standards applicable to the question of bifurcation of issues in general, it is virtually devoid of any facts or circumstances demonstrating that bifurcation is appropriate <u>in this case</u>. The only facts recited in the short "Factual Background" section are at the bottom of page 2 of the Motion for Bifurcation. It says:

> Defendants have asserted that they manufacture, use, offer for sale and/or sell a system known as "Steel Shield." Defendants believe that they are not making, using, offering for sale or selling a product which infringes the '676 Patent because the '676 Patent requires, *inter alia*, that a "tank divider plate is gas permeably attached to the floor surface on another side of the tank divider plate." Plaintiffs, in their patent infringement claim, allege the contrary.

This is how <u>Defendants</u> frame the controversy regarding infringement: whether Defendants make, use, sell, offer to sell, etc., a double bottom system that employs this infringing feature. The significance of the answer to this question is detailed below. For present purposes, however, it suffices to say that how a steel plate is attached to a steel tank bottom does not involve a highly complex technology that would be difficult to explain to a lay jury. Moreover, any potential juror confusion can be remedied with "cautionary warnings, limiting instructions, special verdict forms, and other instructions to the jury." *Real v. Bunn-o-Matic Corp.*, 195 F.R.D. at 621 (citation omitted). Therefore, Defendants have completely failed to demonstrate the existence of one of their major assertions: that juror confusion due to the complexity of the issues in this case will be reduced by trying the issue of infringement separately and first.

**Bifurcation Will Not Promote Convenience, Expedition or Economy**

Another unsupported assertion made by Defendants to support their request to bifurcate the issue of infringement is that doing so will likely eliminate the need to ever try the issues of validity, enforceability, willfulness and damages. Thus, Defendants posit: "If, indeed, there is a finding of non-infringement, then the parties and the court are relieved of the need for preparing for and conducting a more involved trial." Motion for Bifurcation, page 8. This proposition is, of course, a truism. It is repeated several times, *see, e.g.*, Motion for Bifurcation, pages 6, 8 and 9, as if a mantra. This proposition proves too much as it would seemingly be true for every patent infringement case. *Computer Associates International, Inc. v. Simple.com, Inc.*, 247

6

F.R.D. 63, 67 (E.D. N.Y. 2007). Yet a separate trial of the issue of patent infringement is, based upon the case cited by Defendants, not routinely ordered.

On pages 3-4 of the Motion for Bifurcation Defendants set forth the various factors a court might consider in exercising its discretion in deciding whether to bifurcate. However, Defendants have not even attempted to provide any facts showing that any of these factors militate in favor of the bifurcation they request. Indeed, the facts in this case would render a separate trial on the issue of patent infringement more inefficient, would result in no savings in time or resources to the Court or the parties, and the delay and expense inherent in multiple discovery schedules and trials would be prejudicial to Plaintiffs in the determination of their rights. This is because, <u>in this case</u>, a trial on all patent related issues is probable.

### A Finding of Patent Infringement is Likely

Defendants attempt to lend credence to the proposition that a bifurcation of the issue of patent infringement will eliminate the need to discover and try any of the other patent related issues by the unsupported statement: "Bifurcation makes particular sense in cases such as the instant case, <u>where there is a very real possibility that no liability will be found to exist.</u>" (Emphasis supplied). Motion for Bifurcation, page 8. Plaintiffs contend that the opposite is true, and that it is likely that infringement will be found to exist, necessitating a determination of willfulness, damages and the invalidity defenses asserted.

Specifically, as set forth above, Defendants have framed the issue of infringement in terms of how the tank divider plate is attached to floor of the storage tank. In the single claim of the single patent at issue, a copy of which is attached to the Amended Complaint as Exhibit "G" and which is attached hereto as *Exhibit "1"* for the Court's convenience, the tank divider plate is

described as "sealingly attached" on one side, and as "gas permeably attached" on another side. In response to this Court's Scheduling Order dated February, 14, 2008,[4] ("Scheduling Order") Defendants served their Response to Interrogatories and Claim Chart ("Defendants' Response and Claim Chart"), a copy of which is attached hereto as *Exhibit "2."* On page 12 of the Defendants' Response and Claim Chart, Defendants provide their proposed construction of these claim terms.[5] According to Defendants:

| | |
|---|---|
| the tank divider plate is sealingly attached to the floor surface on one side of the tank divider plate, and | "Sealingly attached" means an impermeable seal weld.<br><br>"The divider plate 42 is gas permeably attached on one side of the floor surface 14 and impermeably attached on the other side. A stitch weld is preferred for permeable attachment at 44 and a seal weld is preferred for impermeable attachment at 46." (Column 4, lines 39-43) |
| the tank divider plate is gas permeably attached to the floor surface on another side of the tank divider plate. | "gas permeably attached" means a stitch weld on one side of the divider plate. "The divider plate 42 is gas permeably attached on one side of the floor surface 14 and impermeably attached on the other side. A stitch weld is preferred for permeably attachment at 44 and a seal weld is preferred for impermeable attachment at 46." (Column 4, lines 39-43).<br><br>Several divider plates 42 may be used in the system, so long as one side is permeably attached to the bottom surfaces, and the other side is impermeably attached. (Column 5, lines 30-32) |

---

[4] On page 3 of the Motion for Bifurcation, Defendants assert that the Scheduling Order "reflects the primacy of the issue of patent infringement in this case" by among other things, requiring "responses to interrogatories on the issue of infringement." However, the Scheduling Order also requires Defendants to respond to interrogatories and claim charts on the issues of anticipation, obviousness and other grounds of invalidity. Consequently, the Scheduling Order does not reflect the "primacy" of any issue, but treats infringement and invalidity equally.

[5] Plaintiffs do not agree that Defendants' claim construction is correct in this regard. Not surprisingly, Defendants' construction is exceedingly narrow. Nonetheless, it is conceded that even this narrow construction does describe a subset of infringing devices.

8

Thus, even according to Defendants' narrow construction, an infringing device would employ a tank divider plate attached to the tank floor by a seal weld on one side and a stitch weld on the other side. In fact, Defendants have advertised just such an infringing system.

Attached hereto as *Exhibit "3"* is a copy of a marketing brochure used by Defendants to sell and offer for sale their "Steel Shield" system (the "Steel Shield Brochure"). This brochure has been provided to Defendants in discovery by Plaintiffs, and is cited by Plaintiffs in their own Response to Interrogatories and Claim Chart ("Plaintiffs' Response and Claim Chart") a copy of which was previously filed under seal. On the last page, the Steel Shield Brochure invites potential customers to "visit us at www.enviro-steel.com." Although the content of the referenced Enviro-Steel website has recently been changed, for several years it has been maintained by Defendants. In paragraph 24 of Defendants' Answer to the Amended Complaint they admit that John Toscano put together the enviro-steel.com website for marketing purposes. A copy of the content of the Enviro-Steel website, prior to the recent change, was provided to Defendants in discovery by Plaintiffs. This content included various photos of a double bottom system, and among those photos was the photo of a tank divider plate. The first page of the previous Enviro-Steel website and the photo of the tank divider plate are attached hereto as *Exhibit "4."*[6] This photo clearly shows a tank divider plate, labeled as a "zone divider," that is a steel plate with a continuous seal weld on one side, and a stitch weld on the other.

Therefore the Defendants, by their own illustration, were advertising their double bottom system for sale, incorporating a tank divider plate which, by their own definition, infringes the patent-in-suit. Plaintiffs therefore submit that, in this case, a finding that the Defendants

---

[6] This photo was a part of the Enviro-Steel website content at least as of May 5, 2008, the service date of Plaintiffs' Response and Claim Chart.

9

infringed Plaintiffs' patent by at least offering for sale an infringing product, is likely. That being the case, it saves the Court and the parties nothing to bifurcate the issue of patent infringement, because a trial on the other patent related issues will be likely required in any case. *Real v. Bunn-o-Matic Corp.*, 195 F.R.D. at 623-624 ("In the event that liability is found, two separate trials with two separate juries at remote times would not serve judicial economy.") (citation omitted).

### Damages and Willfulness

Defendants have argued at Motion for Bifurcation pages 7-8, that the issue of patent infringement should be tried separately because it is "separate" from the issues of damages and willfulness.[7] Again, Defendants have not demonstrated that damage or willfulness issues themselves would be complex, nor have they demonstrated any other facts or circumstances justifying a separate determination of these issues. In short whether or not these issues may be separately tried, Defendants have not demonstrated why they should be separately tried.

### Avoidance of Prejudice

Defendants have asserted four forms of prejudice they say will be avoided by bifurcating the issue of patent infringement. Motion for Bifurcation, pages 11-13. First, they say, if all issues were to be tried together, they would have to move to disqualify John Carey from acting as trial counsel. This, Defendants say, is due to an alleged conflict of interest arising from the assertion that Steven Greenberg, a member of Mr. Carey's law firm, is expected to be a material

---

[7] In fact, courts facing this question have declined to bifurcate determinations of willfulness and infringement finding that these issues are factually interdependent. *Computer Associates Intn'l, Inc. v. Simple.com, Inc.*, 247 F.R.D. at 67-68. And *see, Real v. Bunn-o-Matic Corp.*, 195 F.R.D at 625-626; *Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. at 608.

10

fact witness. Such a disqualification would, according to Defendants, be substantially prejudicial to Plaintiffs.

Plaintiffs cannot take seriously, and neither should this Court, the threat of an unfiled and unsupported motion to disqualify Plaintiffs' co-counsel. However, should such a motion be filed, and should the Court grant it, Plaintiffs hereby waive any prejudice that they might suffer as a result.

Second, Defendants say bifurcation will enable them to protect "their confidential business information, such as sales, pricing and marketing information..." Motion for Bifurcation, page 12. In fact, this Court entered a Protective Order for Confidential Information on January 10, 2007 ("Protective Order"). Under the Protective Order, the parties have already produced to each other and each other's counsel all manner of confidential business information. Indeed, Plaintiffs have already produced the exact type of confidential sales, pricing and marketing information in discovery under the Protective Order.[8] Thus, Defendants will not be prejudiced by this routine discovery in any way.

Third, Defendants say they "may" be prejudiced in their defense on infringement if they were "compelled to turn over to Plaintiffs the legal opinions supporting their defense on willfulness." Motion for Bifurcation, page 12. This is a curious position because it appears to refer to an advice of counsel defense that Defendants have not asserted in their Answer to the Amended Complaint, and have therefore waived.

In addition, Defendants quote a paragraph from *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-644 (Fed. Cir. 1991) posing what has become known as the "*Quantum* dilemma."

---

[8] Curiously, this production did not cause any concern on the part of Defendants or their counsel that Plaintiffs would be prejudiced.

That is the dilemma of an accused infringer in choosing whether to waive the attorney-client privilege in defense of a willfulness claim by disclosing an opinion of counsel.[9] Whether *Quantum* had any precedential force to begin with, its survival is questionable.[10] In any case, even the *Quantum* court recognized that trial courts need not concern themselves with this "dilemma" until, after an in-camera inspection of the attorney-client communications, the court determines that such a dilemma actually exists. *Id.* And *see, Codman & Shurtleff, Inc. v. Integra Life Sciences Corp.*, 2008 WL 2242439 *2 (D.N.J. May 29, 2008). Because Defendants have not asserted an advice of counsel defense, much less submitted opinions of counsel for in-camera review, this "dilemma" is entirely hypothetical.

Fourth, Defendants have argued that they will be prejudiced if the issue of infringement is not bifurcated because they are "unsure of their rights." Motion for Bifurcation, page 13. Delay in determining the issue of infringement, they say, will continue their uncertainty and their prejudice. While their uncertainty may be real, the resolution of uncertainty of litigants' rights is the universal business of courts, and delay is a universal complaint. In this regard, however, Defendants have not demonstrated any prejudice or uncertainty beyond that inherent in any litigation.

In fact, an unjustified bifurcation, which would result in separate and sequential discovery schedules and jury trials, would prejudice Plaintiffs in expense and delay in determination of their rights. *Computer Assoc. Intn'l, Inc. v. Simple.com, Inc.*, 247 F.R.D. at 67; *Real v. Bunn-o-Matic Corp.*, 195 F.R.D. at 620-621. As detailed above, it is highly likely that a trial of all patent related issues will be required in this case. Defendants have not met their

---

[9] The quoted language was <u>obiter dicta</u> in the *Quantum* appeal, which was decided on a purely procedural issue.

[10] *Trading Technologies Intern. Inc.*, 431 F.Supp.2d at 837-839.

12

burden of demonstrating that discovering and trying the issue of patent infringement first will achieve efficiency or economy, or avoid prejudice, as required for bifurcation. Consequently, the Motion for Bifurcation should be denied.

        Respectfully submitted,

        **TEW CARDENAS, LLP**
        *Co-Counsel for Plaintiffs*
        Four Seasons Tower
        1441 Brickell Avenue, 15th Floor
        Miami, FL  33131
        Telephone:  305.536.1112
        Facsimile:  305.536.1116

        By     s/ Dennis A. Nowak
                DENNIS A. NOWAK
                Florida Bar # 328979
                dn@tewlaw.com

and

**CAREY RODRIGUEZ, ET AL.**
*Co-Counsel for Plaintiffs*
John C. Carey, Esq.
1395 Brickell Ave., Suite 700
Miami, FL  33131

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically this 13th day of August, 2008 with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via e-mail and U.S. mail, either via transmission of Notices of Electronic Filing generated by CM/ECF or via U.S. mail to for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By _____s/ Dennis A. Nowak_____
DENNIS A. NOWAK

C:\NrPortbl\Miami\AG\511051_1.DOC

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112