UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 06-61840-CIV-SELTZER

TROY BROWN, GENERAL HOLDINGS
CO., and ATTAWAY SERVICES, INC.,

    Plaintiffs,

vs.

JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRO-STEEL
SERVICES, INC., JOHN. R. TOSCANO,
INC., and DAVID MEAUX,

    Defendants.

JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRO-STEEL
SERVICES, INC. and JOHN. R. TOSCANO,
INC.

    Counterplaintiffs/Cross-Plaintiffs,

vs.

TROY BROWN, GENERAL HOLDINGS
CO., ATTAWAY SERVICES, INC., and
DAVID MEAUX,

    Counterdefendants/Cross-Defendants.

_____/

**DEFENDANTS JOHN TOSCANO, ENVIRO-STEEL CORPORATION,
ENVIRO-STEEL SERVICES, INC. AND JOHN R. TOSCANO INC.'S
<u>REPLY MEMORANDUM IN SUPPORT OF MOTION FOR BIFURCATION</u>**

Defendants/Counterplaintiffs John Toscano ("Toscano"), Enviro-Steel Corporation ("Enviro-Steel"), Enviro-Steel Services, Inc. ("Service, Inc.") and John R. Toscano, Inc. ("Toscano, Inc.") (collectively, "Defendants") hereby respectfully submit this Reply Memorandum in support of their Motion for Bifurcation ("Motion").

{NY036983;1}

In their Motion, Defendants answered the Court's inquiry as to how best to bifurcate this case – that is, by first separately adjudicating the central issue of patent infringement. Defendants' Motion explains in detail how such bifurcation is a common practice in patent litigation – and how each of the underlying factors supporting such bifurcation are specifically present here.

Notably, Plaintiffs offer no alternative proposal for bifurcation in their Opposition, notwithstanding this Court's inquiry about the need to bifurcate this unwieldy case. Plaintiffs offer no reason why this Court should not adopt Defendants' sensible proposal supported by both fact and law. The best Plaintiffs can do is argue that Defendants' motion is tactical in nature. Plaintiffs' argument ignores the history of this case – since Defendants initially moved to dismiss the patent infringement charge (Count III), there was no basis to seek bifurcation of the infringement claim until after the Court's ruling on that Dismissal Motion.

### A.   Bifurcation Is Common in Patent Litigation

Plaintiffs try to paint Defendants' proposed bifurcation as an abnormal request. Although Plaintiffs claim that "bifurcation is the exception, not the rule," Opp'n at 2, federal courts have made clear that "[b]ifurcation, while perhaps not routine, *is nonetheless common in patent litigation.*" *Yamaha v. Bombardier, Inc.*, 2001 WL 501354, *3 (C.D. Cal. May 4, 2001).

Indeed, Plaintiffs acknowledge the bevy of authorities that support the exact type of bifurcation proposed by Defendants. Plaintiffs' only real contention is that Defendants have not pointed to specific facts about this case that warrant the requested bifurcation under these well-established principles because the issue of patent infringement *per se* may not be complex. By focusing solely on the infringement issue, Plaintiffs engage in classic misdirection. What Plaintiffs wholly ignore is that the case overall is extremely complex both procedurally and substantively. The propriety of bifurcation must be measured in terms of the complexity of the

entire case, not just the discrete issue to be bifurcated. Logic dictates that an issue which is less when compared to the remainder of the case, should be bifurcated – the less complex an issue may be, the more compelling are the justification and need for that bifurcation.

Even this Court has questioned how this case could possibly be tried at once. Rampant jury confusion, unwieldy discovery, and other externalities could all be avoided by Defendants' proposed bifurcation in the specific circumstances of this case.

### B.   One Trial of This Case Would Cause Massive Jury Confusion

Plaintiffs first posit that Defendants have failed to demonstrate "that jury confusion due to the complexity of the issues in this case will be reduced by trying the issue of infringement separately and first." Opp'n at 6. To the contrary, Defendants' Motion is full of examples of how extreme jury confusion is inevitable if this case is not bifurcated.

As a whole, this case is massive. There are 3 plaintiffs, 5 defendants, 4 counter-plaintiffs/cross-plaintiffs, and 4 counter-defendants/cross-defendants each involved in a distinct subset of 7 claims, 18 counterclaims, and 9 cross-claims. At a minimum this adds up to 34 claims. The permutations would be seemingly endless to a jury.

But just the magnitude of claims is not the end of the problem  Compounding the confusion, these claims span a variety of subject matters, including patent infringement, patent validity, inequitable conduct, patent ownership, trademark infringement, trademark ownership, corporate ownership, breach of fiduciary duties, breach of contract, fraud, negligent misrepresentation, tortious interference, and unjust enrichment. Even on the patent front, jurors would have to consider a slew of issues and sources of evidence pertaining to (1) Plaintiffs' patented invention and such matters as its inequitable conduct, invalidity on various bases such as

the violation of "on-sale" bar, proper inventorship, prior art, obviousness, and commercial success; and (2) Defendants' product and the ins-and-outs of its composition and commercial use.

Under Defendants' proposed bifurcation, the jury would have to consider just **1** claim, infringement, and the specifics of just **1** one product. While Plaintiff has presented the issue of patent infringement *per se*, somewhat erroneously, as will be pointed out in the next section, Plaintiffs' lengthy argument that the issue of patent infringement is not complex in this case – actually *supports* Defendants' proposed bifurcation. Since, according to Plaintiffs, infringement is not complex, what would be better for bifurcation than a discrete issue of less complexity (according to Plaintiffs themselves) as compared to the behemoth of complex, interwoven claims that is presented by the remainder of this case?

In effect, Plaintiffs argue that it is preferable for this case to go forward in its entirety, apparently hoping at trial that if they create enough confusion ("where there's smoke, there's fire"), the jury will come back with some form of a favorable verdict. But that is not a sufficient basis to deny bifurcation.

### C. Plaintiffs' Discussion of Likelihood of Patent Infringement Also Supports Defendants' Proposed Bifurcation

Plaintiffs discuss at length their opinion on the likelihood of infringement. *See* Opp'n at 7-10. While naturally the parties disagree on the issue of infringement, what can not be disputed is that Plaintiffs are chasing after the wrong product. The patent issued November 6, 2007. Since before that date, Defendants have not sold a single product corresponding to the product previously illustrated on their website.[1] Therefore, as a **practical** matter, it is legally irrelevant if Defendants' initial product, sold only before the patent issued, infringed or not, because the statutory patent right (*i.e.*, the right to exclude others) does not inure until the patent issues.

---

[1] The website was changed shortly after Defendants learned that the patent had issued.

*Gargoyles, Inc. v. United States*, 113 F.3d 1572 (Fed. Cir. 1997).[2] Therefore, the relevant issue is whether or not products sold by Defendants **after** November 2007, *i.e.,* Defendants' **current product** infringes.

Notwithstanding that Plaintiffs' opposition to bifurcation alleges infringement of the wrong product, Defendants will not discuss the merits of Plaintiffs' infringement arguments. This is a motion for bifurcation, so Defendants will only address how Plaintiffs' arguments (*i.e.* the fact of the parties' substantial dispute) impact that requested relief. Of course Plaintiffs' discussion merely underscores the need to bifurcate.

The Court will construe the relevant patent claims, and the jury will then compare those construed claims to Defendants' product and render an infringement verdict.

Plaintiffs ignore the fact that resolution of infringement – either in Plaintiffs' or Defendants' favor – would likely encourage settlement and dispose of this entire case without any further discovery or trial. *See Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. 607, 609 (N.D. Ga. 1989). If Defendants prevail on infringement, and if the parties could then settle all remaining 30+ claims, the case is over. If Plaintiffs prevail on infringement, then the likelihood of settlement is still promoted given the resolution of a core, hotly disputed issue. Settlement could even take place ***before*** an infringement trial as the parties near resolution of such a fundamental issue, and again would save substantial resources of both the parties and the Court.

Bifurcation provides no downside even if settlement is not achieved. As explained in their Motion, Defendants' proposed bifurcation would not require any meaningful duplication of effort from the parties or the Court. First, if the case continues after trial on infringement, the Court's *Markman* construction of the patent claims would simply carry forward to all patent issues

---

[2] While, as a technical matter, an "offer to sell" may constitute an infringement under 35 U.S.C. § 271, Defendants are not aware of any case which holds that an advertisement, without a subsequent sale, is actionable and certainly, if there has been no sale, then there is no damage or harm.

{NY036983;1}

during the later phase. Second, a finding of infringement would then open the separate inquiries of damages and willfulness. Therefore, even under this scenario (where the parties do not settle and there is a finding of infringement) there is little – if any – duplication of efforts. To the contrary, under any other scenario (*e.g.* a finding of non-infringement followed by the potential for settlement) most if not all of this massive case would never have to be adjudicated.

While opposing bifurcation of the infringement issue, but not proffering any alternatives to a full blown trial on all issues, Plaintiffs make it clear that the overall complexity of this case should be ignored. Defendants submit that Plaintiffs' position is not helpful to the effective administration of justice.

### D. Damages and Willfulness Are Complex Issues Worthy of Separate Adjudication

Plaintiffs also allege that Defendants provide no indication that the issues of damages and willfulness are sufficiently complex to warrant bifurcation. However, Plaintiffs overlook the common practice of bifurcating these *per se* complex issues in patent litigation. *See, e.g.*, *Novopharm Limited v. Torpharm*, 181 F.R.D. 308, 310 (E.D.N.C. 1998) ("Patent cases are uniquely amenable to bifurcation because of the complex nature of the damages determination and the extensive discovery that is often necessary to prove the nature and extent of those damages."); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 982 (D. Del. 1982), *aff'd*, 758 F.2d 668 (Fed. Cir. 1984) ("The trial of the damages question in such a suit is often difficult and expensive, while being easily severed from the trial of the questions of validity and infringement of the patent.") Indeed, "[a] determination regarding patent infringement does not require a detailed inquiry into the elements of willful infringement," including the discrete and subtle subject of the state of mind of the Defendants. *Princeton Biochemicals, Inc. v. Beckman Instruments*, 180 F.R.D. 254, 258 (D.N.J. 1997).

What is the benefit to a jury, to hear competing damages experts testify, if there is ultimately a finding of non-infringement? Plaintiffs suggest no such benefit. Since an award in a patent case, by statute, is "damages adequate to compensate for the infringement but in no event less than a reasonable royalty" (35 U.S.C. § 284), what benefit is there to present "compensation" and "reasonably royalty" issues to a jury? In fact, the statutory scheme for interlocutory appeals even recognizes that damages are frequently not tried in the liability phase of a patent case.[3]

Therefore, regardless of how simple or complex the infringement issues might be, they are inherently separate and apart from damages and willfulness and should be bifurcated.

### E.  Bifurcation Would Prevent Various Forms of Prejudice

Plaintiffs are also incorrect in suggesting that Defendants' proposed bifurcation would not confer the benefits of avoiding various forms of prejudice.

First, Plaintiffs attempt to "waive any prejudice that they might suffer as a result" of the disqualification of their current co-counsel of record that would be sought by Defendants absent bifurcation. Even if Plaintiffs waive any prejudice, they apparently do not agree to the disqualification, otherwise, Plaintiffs' patent counsel would already have withdrawn. Since there has been no withdrawal, Defendants must now brief, Plaintiffs must now oppose, and the Court must inevitably rule on a disqualification motion. Therefore, regardless of Plaintiffs' half-hearted concession, substantial prejudice in the form of the Court's time and the time and expense to the parties could still be avoided by Defendants' proposed bifurcation.[4]

---

[3]  As an exception to the general rule requiring finality, an appeal lies from a decision in a patent case which is final but for an accounting. 28 U.S.C. § 1292 (c)(2) thus demonstrating statutory approval of bifurcation in patent cases. Here, Defendants suggest not trying all the patent issues at once, but bifurcating only infringement since the other patent issues are so complex.

[4]  Plaintiffs contend that Defendants cannot base their proposed bifurcation on an "unfiled and unsupported motion to disqualify Plaintiffs' co-counsel." Opp'n at 11. However, that is the exact point – Defendants seek to *avoid* having to file such a motion for the benefit of both the parties and the Court.

{NY036983;1}

7

Second, Plaintiffs are incorrect that the Protective Order provides full and complete protection for Defendants' confidential business information. Plaintiffs forget that Defendants' request for bifurcation pertains not just to discovery, but to trial. Indeed, the Protective Order (¶ 7) expressly provides:

> Before offering or otherwise causing designated information to become evidence in any trial or evidentiary proceeding, the party wishing to use such information shall seek the aid of the Court in formulating a reasonable procedure for preventing the disclosure of such information to persons not authorized hereunder to receive the information. ***Nevertheless, such information shall not be inadmissible nor shall any party be deemed to be proscribed by this agreement from offering or using such information as evidence.*** (emphasis added)

Therefore, the Protective Order itself makes clear that Defendants could be severely prejudiced by the unnecessary presentation of their confidential information at trial. But this is precisely what Plaintiffs obviously seek, namely, having Defendants' confidential information being made public so that Plaintiffs can thereafter use such information free of any confidentiality claim.

Third, Plaintiffs state in conclusory terms that Defendants have definitively waived their advice of counsel defense by not including it in their first answer to Plaintiffs' patent infringement claim. Not surprisingly Plaintiffs cite no authority for this position, because it is meritless. *See, e.g., Hargett v. Valley Fed'l Sav. Bank*, 60 F.3d 754, 762-63 (11th Cir. 1995) (rejecting argument that affirmative defense is waived if not included in answer because district courts under Fed. R. Civ. P. 15(a) have "extensive discretion to decide whether to grant leave to amend after the time for amendment as a matter of course has passed").

Until Defendants' take the appropriate deposition (*e.g.,* Plaintiffs' Fed. R. Civ. P. 30(b)(6) witness on the issue of infringement, which has not yet been noticed) there is no reason for Defendants to choose whether or not to assert the "advice of counsel" defense. But after Defendants learn the <u>facts</u> as to how Plaintiffs' infringement assertion is related to Defendants' current product, then a decision will be made on the advice of counsel defense. If appropriate at

that time, Defendants will seek leave to amend pursuant to Rule 15(a) to assert such affirmative defense.

While Plaintiffs argue that Defendants may not have to face the "dilemma" of disclosing privileged communications "until, after an in-camera inspection of the attorney-client communications, the court determines that such a dilemma actually exists," Opp'n at 12, that argument actually acknowledges that the threat of substantial prejudice to the Defendants is real if this case proceeds in its entirety – and that Defendants' proposed bifurcation could do away with that prejudice to Defendants and do away with the need for the Court to consider documents *in camera* and/or to consider a motion for leave to amend.

Finally, Plaintiffs argue that Defendants must simply accept the fact that their rights are uncertain as part of the price of litigation, and that the parties are more likely prejudiced by expense and delay inherent in bifurcation. *See* Opp'n at 12-13. However, Plaintiffs have pointed to no actual underlying expense or delay inherent in Defendants' proposed bifurcation. As described in Defendants' Motion, patent infringement issues are largely distinct from the remaining issues in this case, and therefore will not require any duplicative effort in terms of either discovery or trial. To the contrary, bifurcation will accelerate the core issue in this case: patent infringement. Only then will the darkest cloud looming over the parties be removed as efficiently as possible.

## CONCLUSION

For the reasons stated above and in their Motion, Defendants respectfully request that this Court grant their Motion, bifurcate the issue of patent infringement, stay discovery on all other issues, and grant Defendants such other relief deemed necessary or proper.

Respectfully submitted,

**AKERMAN SENTERFITT**

One Southeast Third Avenue - 25th Floor
Miami, Florida 33131-1714
Tel: 305-374-5600
Fax: 305-374-5095

By: _____
Merrick L. Gross, FBN 716677
merrick.gross@akerman.com
Jeffrey T. Cook, FBN 0647578
jeffrey.cook@akerman.com
James A. Bombulie, FBN 0025749
james.bombulie@akerman.com

Jerold I. Schneider, FBN 0026975
Akerman Senterfitt
222 Lakeview Avenue, Suite 400
West Palm Beach, FL 33401
Phone (561) 653-5000
Fax  (561-659-6313
jerold.schneider@akerman.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August __22__, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Carrie Ann Hastings
Carrie Ann Hastings

## SERVICE LIST

### CASE NO: 06-61840-CIV-SELTZER

Dennis Nowak, Esq.
Tew Cardenas, LLP
*Co-Counsel for Plaintiffs*
1441 Brickell Avenue
15th Floor
Miami, FL  33131-3407

Stephen R. Verbit, P.A.
*Counsel for Defendant Meaux*
9900 Stirling Road
Ste 200A
Cooper City, FL  33024

John C. Carey, Esq.
Carey, Rodriguez, Greenberg and Paul, LLP
*Co-Counsel for Plaintiffs*
1395 Brickell Avenue
Suite 700
Miami, FL 33131

{NY036983;1}