UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61840-SELTZER

CONSENT CASE

TROY BROWN, GENERAL HOLDINGS
CO., and ATTAWAY SERVICES, INC.,

      Plaintiffs,

vs.

JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRON-STEEL
SERVICES, INC., JOHN R. TOSCANO,
INC., and DAVID MEAUX,

      Defendants,

JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRO-STEEL
SERVICES, INC., and JOHN TOSCANO,
INC.,

      Counter-Plaintiffs/Cross-Plaintiffs,

vs.

TROY BROWN, GENERAL HOLDINGS
CO. and ATTAWAY SERVICES, INC.,
and DAVID MEAUX,

      Counter-Defendants/Cross-Defendants.

_____/

## ORDER ON MOTION TO DISMISS COUNTERCLAIMS

THIS CAUSE is before the Court on Plaintiffs'/Counter-Defendants' Motion to

Dismiss in Part, Counterclaims IV, V, and VI and to Dismiss Counterclaim VII (DE 144).

For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

I.    FACTUAL BACKGROUND[1]

In December 2003, Troy Brown and David Meaux filed a Patent Application for a "Secondary Containment System for Liquid Storage Tanks" with the United States Patent and Trademark Office ("PTO"); Brown and Meaux were listed as co-inventors.  The invention that is the subject of the Patent Application is a process for the installation of a double steel bottom and leak detection system for above-ground petroleum storage tanks. (the "Enviro-Steel DBS").  The PTO subsequently allowed claims 10 and 12 of the Patent Application.

In May 2006, Meaux signed an "Assignment of Patent Application and Patent Rights," purporting to assign his rights as a co-inventor of the Enviro-Steel DBS to John Toscano in consideration of $50,000 previously paid by Toscano to a company wholly owned by Meaux.  In October 2006, the PTO issued a Notice of Allowance, indicating the Patent Application would mature into a patent upon payment of an issue fee by January 17, 2007; a subsequent Notice extended the issue fee deadline to April 9, 2007.  Brown refused to pay the issue fee, and the PTO would not accept an issue fee payment from Toscano alone.   As a result, the Patent Application was deemed abandoned, notwithstanding that a patent would have issued therefrom had the issue fee been timely paid.

Before the abandonment of the Patent Application, Brown had filed a Continuation

---

[1]   The factual background is derived from Counter-Plaintiffs' Second Amended Counterclaims and Cross-Claims (DE 127-2), taking all factual allegations as true, as the Court must when considering a motion to dismiss.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Mills v. Foremost Ins. Co.,  511 F.3d 1300, 1303 (11th Cir. 2008); Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006).

of the Patent Application.  This Continuation requested the PTO to cancel claims 1 through 25 of the Patent Application (including the allowed claims 10 and 12), and it added a new claim 26.  According to the Second Amendment Counterclaims, the invention of claim 26 corresponded to claims 1 through 25 of the Patent Application; while technically a new claim, it was merely a restatement of the previously allowed claims.  The Continuation, however, identified only Brown as the (sole) inventor.  Counter-Plaintiffs allege that the Continuation was filed for the primary purpose of removing Meaux (who had allegedly assigned his rights to Toscano) as an inventor.  Brown thereafter assigned his entire interest in the Continuation to General Holdings; subsequently Brown (despite his prior assignment to General Holdings) and Meaux (despite his prior alleged assignment to Toscano) assigned their interests to Attaway Services, Inc.  The Continuation Application issued as a patent on November 6, 2007.  Counter-Plaintiffs allege that these assignments were intended to extinguish Toscano's patent rights.

In the interim, on April 9, 2007 (the day the initial Patent Application was abandoned), Brown filed a Second Continuation,[2] claiming priority to the Patent Application and listing Brown as the sole inventor.  The Second Continuation is still pending before the PTO.  According to the Second Amended Counterclaims, Brown filed the Second Continuation with the same intention – to extinguish Toscano's rights.

---

[2]  Counter-Defendants refer to this filing as a Continuation-In-Part (as opposed to a "Second Continuation"); they contend the term "Second Continuation" ignores the distinction between a Continuation Application and a Continuation-In-Part Application. The Court uses the term "Second Continuation," as used in the Second Amended Counterclaims, the pleading at issue.

II.    <u>MOTION TO DISMISS</u>

Counter-Defendants Troy Brown, General Holdings Co., and Attaway Services Inc. have moved to dismiss Counterclaims IV, V, and VI, in part, and to dismiss Counterclaim VIII in its entirety.  Counter-Plaintiffs John Toscano, Enviro-Steel Corporation, Enviro-Steel Services, Inc., and John R. Toscano, Inc. have filed a Response (DE 145), and Plaintiff/Counter-Defendants have replied thereto (DE 149).  The motion is now ripe for decision.

A.    <u>Counterclaim IV - Inventorship</u>

Counter-Defendants first move to dismiss, in part, Counterclaim IV, entitled "Declaratory Judgment as to Ownership of the Second Continuation."  Counterclaim IV alleges that the Second Continuation carries forward the claimed invention in the Patent Application and, therefore, Toscano owns the same rights in the Second Continuation that he owned in the Patent Application, as Meaux's assignee.  In the prayer for relief, Counterclaim IV requests that the Court declare that Toscano owns an undivided  interest in the Second Continuation and any patent resulting therefrom.

Additionally, Counterclaim IV alleges that "Toscano is an inventor of the claimed invention in the Second Continuation including the monitoring system for the Enviro-Steel DBS.  Toscano is at least the inventor or claim 12 of the Second Continuation directed to determining in which a bottom leak is when a leak is detected."  Second Amended Counterclaims, ¶ 160.  And Paragraph 122 of the Second Amended Counterclaims alleges that "Brown was listed at the sole inventor on the Second Continutation."  Based on these two paragraphs, Counter-Defendants contend that Toscano is claiming, at least in part, an

4

ownership interest in the Second Continuation Application as an omitted inventor and that a declaration to this effect would require the Court to make a determination of inventorship as to a pending patent application.  According to Counter-Defendants, this Court lacks subject matter jurisdiction to make such a determination because 35 U.S.C. § 116 vests jurisdiction to determine inventorship issues relating to pending patent applications solely in the Director of the United States Patent and Trademark Office (the "PTO").[3]

With few exceptions, courts have consistently dismissed claims pertaining to inventorship issues relating to pending patent applications, albeit for differing reasons.  In support of their argument that this Court lacks subject matter jurisdiction to consider such a claim, Counter-Defendants rely on E.I. Dupont de Nemours & Company v. Okuley, 344 F.3d 578 (6th Cir. 2003).  In E.I Dupont, the Sixth Circuit affirmed the trial court's dismissal of a counterclaim that sought a declaration that the plaintiff was the inventor of the subject matter of a patent application.  In so doing, the appellate court looked to the two statutes governing correction of inventorship – 35 U.S.C. § 116 (applying to patent applications) and 35 U.S.C. § 256 (applying to patents).  Under § 116, "[w]henever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application . . . the Director may permit the application to be amended accordingly, under such terms as he prescribes."  By contrast, § 256 provides in pertinent

---

[3]   In considering a nearly identical argument, one district court has correctly observed that the motion to dismiss raises "two separate but related questions: (1) whether the court has subject matter jurisdiction over the claim, and (2) whether [Counter-Plaintiffs] have a cause of action."  Duke Univ. v. Elan Corp., No. 1:04CV532, 2006 WL 267185, at *3 (M.D.N.C. Jan. 30, 2006) (finding that the court possessed subject matter jurisdiction, but that the party seeking a declaration of the proper inventor on a pending patent application had no cause of action).

part:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in a issued patent . . . the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error. . . . The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

Comparing the language of these two parallel statutes, the E.I. Dupont Court

observed:

> Section 116 does not mention courts, but rather gives discretion to the Director of the PTO to permit amendments to patent applications and to do so under terms as the Director deems proper.  Section 256, by contrast, explicitly mentions the courts and the authority of the courts to compel action by the Director.  Comparing these two sections, it is clear that Congress intended to draw a distinction between patent applications and issued patents.  While the patent is still in the process of gestation, it is solely within the authority of the Director.  As soon as the patent actually comes into existence, the federal courts are empowered to correct any error that the Director may have committed.   Such a scheme avoids premature litigation and litigation that could become futile if the Director declined to grant a patent or voluntarily acceded to the claims of the would-be inventor prior to issue.

Id. at 583-584.  Without further explanation, the appellate court held that the trial court

"lacked jurisdiction to review the inventorship of an unissued patent."  Id. at 584;  see also

Display Research Labs., Inc. v. Telegen Corp., 135 F. Supp. 1170, 1173-74 (N.D. Cal.

2001) (holding that court did not have jurisdiction to correct a patent application under

§ 116).[4]

Numerous other courts, however, have held that federal district courts do have subject matter jurisdiction, albeit under 28 U.S.C. §1338(a), to consider inventorship issues relating to a pending patent application.[5]  See, e.g., Saint-Gobain Ceramics & Plastics, Inc. v. Wang, No. 07-40129-FDS, 2008 WL 2756873, at *4  (D. Mass. June 27, 2008); Simonton Bldg. Prods., Inc. v. Johnson, 535 F. Supp. 2d 642, 647-649 (N.D.W. Va. 2008); Duke Univ. v. Elan Corp., No. 1:04CV532, 2006 WL 267185, at *3 (M.D.N.C. Jan. 30, 2006);  Concrete Washout Sys., Inc. v. Vinegar Envtl., No. CIVS041005, 2005 WL 1683930, at *3 (E.D. Cal. July 12, 2005); see also Stevens v. Broad Reach Cos., L.L.C., No. 05-647-CV-W-GAF, 2006 WL 1556313, at *8 (W.D. Mo May 31, 2006) (finding that jurisdiction not proper under § 1338(a), but court had jurisdiction to hear inventorship claim because the plaintiff asserted that he had a private cause of action to relief implied from

---

[4]  In support of their argument that this court lacks subject matter jurisdiction, Counter-Defendants also cite Eli Lilly and Company v. Aradigm Corporation, 376 F.3d 1352 (Fed. Cir. 2004), and Chambers v. Cooney, 535 F. Supp. 2d 1255 (S.D. Ala. 2008). In Eli Lilly, the Federal Circuit stated, in dicta, that § 116 only grants authority to the Director of the PTO to take certain actions, but that "does not create a cause of action in the district courts to modify inventorship on pending patent applications."  376 F.3d at 1357 n.1.  The Eli Lilly Court, however, did not address whether a district court would have subject matter jurisdiction to hear such a claim.  In Chambers, the district court summarily stated, in dicta, that "federal courts have jurisdiction to correct inventorship on issued patents, not pending patent applications."  535 F. Supp. 2d at 1258 n.1 (citing Eli Lilly).

[5]  Section 1338(a) provides in pertinent part:  "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ." In Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988), the Supreme Court clarified that the statute confers jurisdiction on federal courts only where "federal patent law creates a cause of action" or, alternatively, where a "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law."  Id. at 808-09.

federal law); Sagoma Plastics, Inc. v. Gelardi, 366 F. Supp. 2d 185, 190 (D. Me. 2005) (concluding that the court did have jurisdiction under § 1338(a) because Congress did not create a private right of action to resolve questions of inventorship in patent applications, but finding that "where a plaintiff asserts that a private right of action is implied from federal law, federal courts do have the requisite subject matter jurisdiction to determine whether such a remedy exists.") (quoting Arroyo-Torres v. Ponce Fed. Bank, F.B.S., 918 F.2d 276, 280 (1st Cir. 1990)).   These courts nonetheless have declined to exercise their jurisdiction, and they have dismissed such claims pursuant to Federal Rule of Civil Procedure 12(b)(6) or on other policy grounds; they have concluded that § 116 does not provide a private cause of action, but rather empowers only the Director of  the PTO to decide inventorship matters in a pending patent application. [6]   For example, in Sagoma Plastics, 533 F. Supp. 2d at 187-189, the court, pursuant to Rule 12(b)(6) – as opposed to Rule 12(b)(1), relating to dismissals for lack of jurisdiction – dismissed a claim seeking a declaratory judgment as to inventorship on a pending patent application for failure to state a claim.   Relying on Eli Lilly and E.I. Du Pont, the court held that § 116 does not provide either an express or implied private cause of action.   And it observed that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not create a cause of action, but merely

---

[6]  But see Post Performance, LLC v. Renaissance Imports, Inc., 333 F. Supp. 2d 834, 839-40 (E.D. Mo. 2004) (declining to dismiss claims of inventorship in pending design patent applications, holding that inventorship issue provided "a substantial enough basis for federal jurisdiction" under § 1338(a) after applying Christianson analysis; court, however, did not consider whether § 116 provides a private cause of action);  Heineken Technical. Servs. B.V. v. Darby, 103 F. Supp. 2d 476, 478-79 (D. Mass. 2000) (same; court did discuss § 116, but only as to whether the statute's "deceptive intent" language precluded the claim).

permits a federal court to hear a cause of action created by Congress in federal patent law.

The court concluded that "[w]ithout a private right of action, [the plaintiff's] claims must fail

even if this Court has jurisdiction under the <u>Christianson</u> analysis"; it explained:

> Interpreting § 116 as precluding a private right of action
> ensures a more rational and coherent process for processing
> patent applications. . . . If a private right of action were implied
> in § 116, a court might grant relief to a plaintiff inventor only to
> have the PTO determine that the particular claims in the
> application over which plaintiff claimed inventorship are not
> patentable.  Or the PTO might deny the patent application in
> its entirety.  It seems unlikely that Congress intended to
> authorize a scheme in which such a waste of scarce judicial
> resources was possible.

<u>Id.</u> at 188.

And in <u>Concrete Washout</u>, 2005 WL 1683930, at *3-4, the plaintiff corporation

sought a declaration that its president was the inventor of the subject matter of a pending

patent application and that the defendants, who had filed the application, had a duty to

amend it to identify the correct inventor.  Although the court found that it had subject matter

jurisdiction to resolve inventorship issues under § 1338(a), the court declined to exercise

that jurisdiction because the PTO had not yet had an opportunity to reach the issue of

inventorship.  Noting that § 116 "makes it the prerogative of the Director of the PTO to

correct errors in inventorship of pending applications" and that § 256 "authorizes federal

courts to adjudicate inventorship of a patent *after* the patent has issued," the court stated

that its decision "comports with the text of the Patent Act which implicitly recognizes that

the court is best advised to reach issues of inventorship after the PTO has reached them."

<u>Id.</u> at *4.

This Court agrees with the reasoning of these decisions and concludes that it does have subject matter jurisdiction under § 1338(a), but that § 116 does not provide a cause of action; rather, § 116 empowers the Director of the PTO to decide inventorship issues relating to a pending patent application. Accordingly, to the extent that Counterclaim IV requests the Court to decide the correct inventorship relating to the Second Continuation Application, it must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

B.    Counterclaims V and VI - Invalidity and Unenforceability

Counterclaims V and VII seek, *inter alia*, a declaratory judgment that any patent issuing on the Second Continuation Application is invalid and unenforceable. Counter-Defendants move to dismiss these counterclaims to the extent they relate to the Second Continuation Application, arguing that a dispute over the validity and enforceability of a pending patent application does not present a justiciable case or controversy under Article III of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201.

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" in the Declaratory Judgment Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."[7] MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007); see also Prassco, LLC v. Medicis Phar. Corp., 537 F.3d 1329, 1335 (Fed. Cir.

---

[7]  Article III of the United States Constitution restricts federal judicial power to the adjudication of cases or controversies. U.S. Const. art. III, § 2.

2008) ("The Declaratory Judgment Act's requirement of 'a case of actual controversy' simply affirms this Constitutional requirement, having long been interpreted as referring to any case and controversy that is justiciable under Article III."). Hence, as long as a claim "meets the case or controversy requirement of Article III, a district court may have jurisdiction over a declaratory judgment action." Id.[8]

In MedImmune, the Supreme Court reaffirmed the basic principle for determining whether a declaratory judgment claim satisfies the "case of actual controversy" requirement: "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" 549 U.S. at 127 (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).  The MedImmune Court emphasized that the dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it [must] be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Id. at 127(quoting Aetna Life Ins. Co, v. Haworth, 300 U.S. 227, 240-41(1937)).

In GAF Bldg. Materials Corp. v. Robert Bosch Tools Corp., 90 F.3d 479, 481 (Fed. Cir. 1996), the Federal Circuit addressed a nearly identical argument as that raised by Counter-Defendants here – whether a district court has subject matter jurisdiction to enter

---

[8] "Whether an actual controversy exists under the Declaratory Judgment Act in a patent case is a question of law."  Black & Decker, Inc. v. Robert Bosch Tool Corp., 371 F. Supp. 2d 965, 968 (N.D. Ill. 2005) (citing Vanguard Research, Inc. v. Peat, Inc., 304 F.3d 1249, 1254 (Fed. Cir. 2002)).

a declaratory judgment that a pending patent application is invalid and not infringed.  The

plaintiff in GAF had alleged that a design patent was "about to issue," and it sought a

declaratory judgment that the "patent" was invalid and not infringed.  The district court

dismissed the action for lack of subject matter jurisdiction, holding that no actual case or

controversy existed because the patent had not issued when the suit commenced.  The

GAF Court first noted that "[t]he existence of an actual controversy is an absolute predicate

for declaratory judgment jurisdiction." Id. at 481.  In affirming the district court's dismissal,

the appellate court stated:

> [I]t is clear that GAF's complaint did not present a justiciable
> case or controversy under Article III and § 2201 when it was
> filed.  The complaint alleged a dispute over the validity and
> infringement of a possible *future* patent not then in existence.
> The district court did not know with certainty whether a patent
> would issue or, if so, what legal rights it would confer upon Elk.
> Thus, the dispute was purely hypothetical and called for an
> impermissible advisory opinion.  Furthermore, the court could
> not have provided specific relief through a decree of a
> conclusive character, since there was no issued patent for the
> court to declare "invalid" or "not infringed"  A declaratory
> judgment of "invalidity" or "non-infringement" with respect to
> Elk's pending patent application would have no legal meaning
> or effect.

Id. at 482 (internal citations, quotation marks, and footnotes omitted) (emphasis in

original); see also Black & Decker, 371 F. Supp. 2d at 970 (dismissing a counterclaim

seeking declaratory judgment that a pending patent application was unenforceable due to

inequitable conduct; holding that a ruling on the enforceability of a pending application

would be premature, merely advisory, and academic).

        This Court agrees with the reasoning of GAF and Black & Decker – a declaratory

judgment as to the invalidity and enforceability of a pending patent application does not present a justiciable case or controversy under Article III or the Declaratory Judgment Act; such a declaration would be an impermissible advisory opinion.[9]  Accordingly, to the extent that Counts VI and VII seek a declaration that the Second Continuation Application is invalid and unenforceable, they must be dismissed.

      C.    <u>Counterclaim VIII - Constructive Trust</u>

        Counterclaim VIII asserts that Brown and Toscano (as Meaux's assignee) each owned an undivided interest in the Patent Application and, without Toscano's knowledge or consent, Brown and Attaway undertook a course of conduct to extinguish Toscano's patent rights (¶ 199).  This conduct allegedly consisted of the following: (1) Brown refusing to pay the issue fee to permit the allowed claims in the Patent Application to mature into a patent (¶ 200); (2) Brown's filing of a Continuation by which he canceled the claims in the Patent Application and added one claim, "comprised of elements that were part of the allowed claims of the Patent Application" (¶ 200); (3) Brown's filing of a Second Continuation "carrying forward the claimed subject matter from the Patent Application" (¶ 200); (4) Brown's assigning his rights in the Continuation to General Holdings (¶ 201); and (5) Brown assigning his patent rights and having Meaux assign his patent rights to Attaway.  Counterclaim VIII further alleges that as result of this wrongful conduct Brown, Attaway, and General Holdings have extinguished Toscano's patent rights "by improper

_____

    [9]  This reasoning is equally applicable to Counterclaim IV to the extent it requests the Court to declare the ownership of the Second Application.  Accordingly, that portion of Counterclaim IV must also be dismissed.  <u>See</u> <u>Display Research</u>, 113 F. Supp. 2d at 1174-75 (dismissing counterclaim seeking declaratory judgment as to ownership of pending patent application because the claim was not ripe).

and inequitable means . . . with the intent of depriving Toscano of the use and benefits of those rights" (¶202) and they have "unjustly enriched themselves at the expense of Toscano" (¶ 203). Finally, Counterclaim VIII alleges that no adequate remedy at law exists to protect Counter-Plaintiffs from Counter-Defendants "inequitable conduct and unjust enrichment" (¶ 204). Counter-Plaintiffs request that the Court impose a constructive trust "on all patent rights and interests arising from the Patent Application, the Continuation and the Second Continuation" (p. 36-37).

A constructive trust is an equitable remedy imposed by operation of law where there has been a wrongful taking of the property of another. See Finkelstein v. Southeast Bank, N.A., 490 So. 2d 976, 984 (Fla. 4th DCA 1986). It is "a remedial device with dual objectives: to restore property to the rightful owner and to prevent unjust enrichment." Provenance v. Palm Beach Taverns, Inc., 676 So. 2d 1022, 1025 (Fla. 4th DCA 1996); see also Shultz v. Sun Bank/Naples, N.A., 533 So. 2d 202, 205 (Fla. 2nd DCA 1989) ("A constructive trust . . . is an equitable remedy to achieve justice and to prevent unjust enrichment."). Years ago, the Supreme Court of Florida described a constructive trust as "one raised by equity in respect to property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it." Quinn v. Phipps, 113 So. 419, 422 (Fla. 1927).

Counter-Defendants move to dismiss Counter-Plaintiffs' constructive trust claim in its entirety on the ground that it fails to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). When ruling on a motion to dismiss, a federal court must view a complaint in the light most favorable to the plaintiff and take its

14

factual  allegations as true.  Erickson v. Pardus, ___ U.S. ___, 127 S.Ct. 2197, 2200
(2007); Conley v. Gibson, 355 U.S. 41, 47(1957); Hardy v. Regions Mortgage Inc., 449
F.3d 1357, 1359 (11th Cir. 2006); Beck v. Deloitte & Touche, 144 F.3d 732, 735 (11th Cir.
1998).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "enough
facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly,
550 U.S. 554, 127 S. Ct. 1955, 1964-65; see also Davis v. Coca-Cola Bottling Co. Consol.,
516 F.3d 955,  974 n.43 (11th Cir. 2008) ("The main Rule 8(a) standard now seems to be
whether the 'allegations plausibly suggest [ ] ([and are] not merely consistent with)' a
violation of the law.") (quoting Twombly, 127 S. Ct. at 1966); Watts v. Florida Int'l Univ.,
495 F.3d 1289, 1295-96 (11th Cir. 2007) ("The standard is one of "plausible grounds to
infer.").

Counter-Defendants first argue that the constructive trust claim should be dismissed
because Counter-Plaintiffs have not pled the existence of a confidential relationship,
allegedly a prerequisite to the imposition of a constructive trust under Florida law.  In
considering a motion to dismiss a constructive trust claim, one district court in the Middle
District of Florida rejected the same argument, stating:

> [A]lthough a number of Florida appellate courts have stated
> that a "confidential relationship" is a necessary element of a
> constructive trust, the Florida Supreme Court considers the
> breach of a confidential relationship as but one of several
> circumstances in which the imposition of a constructive trust is
> equitable and just. See Wadlington v. Edwards, 92 So.2d 629,
> 631 (Fla. 1957).  In Wadlington, the Court described the trust
> as "'constructed' by equity to prevent an unjust enrichment of
> one person at the expense of another as the result of [1] fraud,
> [2] undue influence, [3] abuse of confidence or  [3] mistake in
> the transaction that originates the problem." Id. (enumeration

and emphasis added); <u>see also</u> <u>In re Tolbin</u>, 622 So. 2d 988,
990-91 (Fla. 1993); <u>Quinn v. Phipps</u>, 93 Fla. 805, 113 So. 419,
422 (Fla. 1927).

<u>Silver v. Digges</u>, No. 6:06-CV-290-Orl-19DAB, 2006 WL 2104935, at *4 (M.D. Fla. July 17,

2006) (footnote omitted).  Similarly, one court in this District has held that a constructive

trust claim should not be dismissed for the absence of a confidential relationship, noting

that "[t]he Florida Supreme Court expressly has held that a confidential relationship is not

a necessary prerequisite to the imposition of a constructive trust."   <u>Adelphia Cable</u>

<u>Partners, L.P. v. E & A Beepers Corp.</u>, 188 F.R.D. 662, 667 (S.D. Fla. 1999) (King, J.)

(citing <u>In re Estate of Tolin</u>, 622 So. 2d 988, 990 (Fla. 1993) ("A constructive trust is

properly imposed when, as a result of a mistake in a transaction, one party is unjustly

enriched at the expense of another.  Although this equitable remedy is usually limited to

circumstances in which fraud or a breach of confidence has occurred, it is proper in cases

in which one party has benefitted by the mistake of another at the expense of a third

party.")).  This Court agrees with the <u>Silver</u> and <u>Adelphia</u> decisions that a constructive trust

claim should not be dismissed for lack of a confidential relationship.

Counter-Defendants next argue that the constructive trust claim should be

dismissed because there exists an adequate remedy at law.  According to Counter-

Defendants, Counter-Plaintiffs are seeking to impose a constructive trust on Toscano's

alleged rights in the Patent Application, the Patent, and the Second Continuation

Application, which is also what they are seeking to do through Counterclaims II, III, and IV.

The Court first notes that Counter-Plaintiffs have expressly alleged in Counterclaim VIII

that they have no adequate remedy at law (¶ 204).  Furthermore, the Florida Supreme

Court has observed that "[t]he availability of a constructive trust as a mode of relief against unjust enrichment is not, in general, affected by the fact that the plaintiff has a cause of action at law, as distinguished from equity, for damages or other relief." Bell v. Smith, 32 So. 829, 832 (Fla. 1947).  In addition, Federal Rule of Civil Procedure 8(d)(2) permits alternative pleading.  As one court from this District has stated:  "Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief." Adelphia, 188 F.R.D. at 666 (holding that existence of adequate remedy at law does not require dismissal of constructive trust claim).

Finally, Counter-Defendants contend that "patent rights are created only upon formal issuance of the patent." GAF, 90 F.3d at 483.  They, therefore, argue that Counter-Plaintiffs' request to impose a constructive trust as to patent rights that may arise from the Patent Application and the Second Continuation Application is premature, as no such rights presently exist.   And for that reason, there exists no res over which to impose a constructive trust, at least as to the two Applications.  See Bender v. Centrust Mortgage Corp., 51 F.3d 1027, 1030 (11th Cir. 1995) (court may impress property with a constructive trust only if trust res is specific, identifiable property).  The Court agrees.  Although a patent application may be a form of property, it is inchoate; no patent rights arise until the application matures into a patent.   Accordingly, Counterclaim VIII must be dismissed to the extent that it seeks a constructive trust over the Patent Application and the Second Continuation Application.

III.    <u>ORDER</u>

Based on the foregoing, it is hereby ORDERED as follows:

1.      The Motion to Dismiss, in part, with respect to Counterclaim IV is GRANTED. Counterclaim IV is dismissed pursuant to Rule 12(b)(6) for failure to state a claim to the extent that it requests that the Court declare the inventorship of the Second Continuation Application because 35 U.S.C. § 116 does not provide a cause of action.   And Counterclaim IV is dismissed to the extent that it requests the Court declare the ownership of the Second Continuation Application because such a declaration does not present a justiciable case or controversy under Article III or the Declaratory Judgment Act; it would be an impermissible advisory opinion.

2.      The Motion to Dismiss, in part, with respect to Counterclaims V and VII is GRANTED.  Counterclaims V and VII are dismissed to the extent that they request the Court to declare that the Second Continuation Application is not valid or enforceable because such a declaration does not present a justiciable case or controversy under Article III or the Declaratory Judgment Act; it would be an impermissible advisory opinion.

3.      The Motion to Dismiss Counterclaim VIII is GRANTED as to the Patent Application and Second Continuation Application and DENIED as to the the Patent).

DONE AND ORDERED in Fort Lauderdale, Florida, this 18th day of December 2008.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record

18