UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61840-SELTZER

CONSENT CASE

TROY BROWN, GENERAL HOLDINGS
CO., and ATTAWAY SERVICES, INC.,

    Plaintiffs,

vs.

JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRO-STEEL
SERVICES, INC., JOHN R. TOSCANO,
INC., and DAVID MEAUX,

    Defendants,

JOHN TOSCANO, ENVIRO-STEEL
CORPORATION, ENVIRO-STEEL
SERVICES, INC., and JOHN TOSCANO,
INC.

    Counter-Plaintiffs/Cross-Plaintiffs,

vs.

TROY BROWN, GENERAL HOLDINGS
CO. and ATTAWAY SERVICES, INC.,
and DAVID MEAUX,

    Counter-Defendants/Cross-Defendants.

_____/

ORDER ON MOTION FOR BIFURCATION

    THIS CAUSE is before the Court on Defendants John Toscano, Enviro-Steel

Corporation, Enviro-Steel Services, Inc. and John R. Toscano Inc.'s Motion for Bifurcation

(DE 152), Plaintiffs' Memorandum in Opposition to Defendants' Motion for Bifurcation (DE 153), and Defendants' Reply Memorandum in Support of Motion to Bifurcate (DE 154). For the reasons set forth below, Defendants' Motion for Bifurcation is DENIED. The Court, however, will require Defendant to notify Plaintiffs and the Court whether they intend to assert an advice of counsel defense by a date certain (March 13, 2009), and the Court will stay discovery with respect to the legal opinions that serve as the basis of that defense until further Order of the Court.

The claims in this case are many and varied, including: Declaratory Judgments as to the ownership of a patent application, a continuation application, a patent, and a continuation-in-part application; Declaratory Judgment relating to the validity of the patent; trademark infringement (under the Lanham Act, the common law, and state statutory law); and state law claims for fraudulent inducement, negligent representation, breach of fiduciary duty, unjust enrichment, tortious interference with a business relationship, and breach of contract. In all, Plaintiffs have asserted 7 claims, and Defendants have asserted 21 counterclaims and cross-claims.[1]

---

[1] In Plaintiffs' Amended Complaint, they assert the following claims: Declaratory Judgment, declaring that General Holdings is the sole owner of a Patent and Continuation-In-Part Application (Count I); Declaratory Judgment, declaring that Brown and Attaway are the sole owners of a Patent Application (Count II); Patent Infringement (Count III); Declaratory Judgment, declaring that Brown is neither an officer nor a director of Enviro-Steel Corporation and has no liability for the actions of the corporation (Count IV); False Designations, False Descriptions and Dilutions under the Lanham Act (Count V); Common Law Trademark Infringement (Count VI); and Florida Statutory Injury to Reputation and Dilution (Count VII). And in their Second Amended Counterclaims and Cross-Claims, Defendants assert the following counterclaims and cross-claims: Declaratory Judgment as to Trademark Ownership (Count I); Declaratory Judgment as to Ownership of a Patent Application (Count II); Declaratory Judgment as to the Ownership of a Continuation Application (Count III); Declaratory Judgment as to Ownership of a Second Continuation

Pursuant to Rule of Civil Procedure 42, Defendants move to bifurcate the issue of patent infringement from all other issues in this case to be discovered and tried by a jury first. They also request that the Court stay discovery on all issues unrelated to the issue of patent infringement until that issue had been tried. If infringement is found, a second trial (tried to a separate jury) would encompass all of Defendant's remaining defenses to the patent infringement claim, including willfulness, invalidity and unenforceability, as well as damages and all other non-related claims.

Under Rule 42, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims." F.R. Civ. P. 42(b). "Whether to bifurcate a trial is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." Innovative Office Prods. v. Spaceco, Inc., No. 05-04037, 2005 WL 1340865, at *1 (E.D. Pa. 2006) (internal quotation marks omitted); see also Computer Assocs. Int'l, Inc. v. Simple.com, Inc., 247 F.R.D. 63, 67 (E.D.N.Y 2007) (whether to bifurcate a trial is within the sound discretion of the trial court). The party seeking bifurcation "bears the burden of demonstrating that bifurcation

---

(or Continuation-In-Part) (Count IV); Declaratory Judgment as to Patent Invalidity (Count V); Fraud on the U.S. Patent and Trademark Office (Unenforceability for Inequitable Conduct (Count VI); Declaratory Relief as to Non-Infringement (Count VII); Constructive Trust (Count VIII); federal Trademark Infringement (Count IX); Refusal of Registration of Attaway's Trademark Application (Count X); Common Law Trademark Infringement and Unfair Competition (Count XI); Fraudulent Inducement (Count XII); Negligent Representation (Count XIII); Breach of Fiduciary Duty (Count XIV); Unjust Enrichment (against various Plaintiffs and Defendant Meaux) (Counts XV, XVI, and XVII); Breach of Contract (Count XVIII); and Tortious Interference with Business Relationships (against various Plaintiffs and Defendant Meaux (Counts XIX, Count XX, and Count XXI)

would serve judicial economy, avoid inconvenience, and not prejudice any of the parties." Innovative Office Prods., 2005 WL 1340865, at *1; see also Computer Assocs. 247 F.R.D. at 67 ("The moving party bears the burden of establishing that bifurcation is warranted."); Real v. Bunn-O-Matic, Corp., 195 F.R.D. 618, 620 (N.D. Ill. 2000) ("[T]he party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials, based on the circumstances of the individual case."). "While courts have generally been more willing to bifurcate patent trials than other types of cases, bifurcation in these cases remains the exception rather than the rule." Innovative Offices, 2005 WL 1340865, at 1; see also Bunn-O-Matic, 195 F.R.D. at 620 ("Bifurcation in patent cases, as in others, is the exception, not the rule.").

Defendants contend that their proposed bifurcation is proper for the following reasons: (1) infringement issues are easily separable in that validity issues are easily severable from infringement issues, damages are a separate issue, and willfulness is separate from a predicate finding of infringement; (2) bifurcation will promote convenience, expedition, and economy; (3) bifurcation will prevent juror confusion; and (4) bifurcation will avoid prejudice to the parties.

With respect to Defendants' first reason, the Court agrees that the issue of infringement may be easily separable from the issues of validity of the patent, willfulness, and damages. Indeed, Defendant have cited cases in which the courts have bifurcated these issues. However, it does not follow that because such issues may be, and have been, tried separately, it is the better course to follow here.

With respect to Defendants' second reason – convenience, expedition, and

4

economy – Defendants argue that bifurcation is justified because "there is a very real possibility that no liability will be found to exist." Motion at 8 (DE 152). According to Defendants, if there is finding of non-infringement, the parties would not have to prepare for and conduct a more involved trial on validity, damages, and willfulness. Unsurprisingly, Plaintiffs dispute the contention that a jury will find that Defendants have not infringed the patent. In their Response, Defendants have gone to great length to explain why they believe it is likely that a finding of infringement will be made. In their Motion, Defendants did not proffer any facts or explanation supporting their contention that they will likely prevail on the infringement issue, although they did attempt to do so in their Reply. Nonetheless, the record now before the Court is simply inadequate for the Court to determine whether a finding of infringement is likely. This factor, therefore, does not weigh in favor of bifurcation.

Defendants, however, additionally argue that even if infringement were found bifurcation would still yield greater convenience, expedition, and economy. They argue that a trial on infringement alone would, at a minimum, limit the issues that need to tried during a second trial on validity, damages, and willfulness. But, Plaintiffs correctly note, "this proposition is, of course, a truism," Response at 6 (DE 153); it would seemingly be true for almost every patent case. Defendants have not set forth any facts showing that these factors militate in favor of bifurcation in this case.

Finally, with respect to consideration of convenience, expedition, and economy, Defendants contend that resolving the infringement issue first – be it in Plaintiffs' or Defendants' favor – "will likely encourage settlement and dispose of the entire case without

any further discovery or trial." Reply at 5 (DE 154). They argue that "[i]f Defendants prevail on infringement, and if the parties could then settle all remaining 30+ claims, the case is over. If Plaintiffs' prevail on infringement, then the likelihood of settlement is still promoted given the resolution of a core, hotly disputed issue." Id. Defendants, however, have failed to explain how resolution of the one infringement issue would facilitate the settlement of unrelated claims, such as ownership of the patent application, the continuation application, the patent, and the continuation-in-part application, as well as trademark infringement and the state law claims for fraudulent inducement, negligent representation, breach of fiduciary duty, unjust enrichment, tortious interference with a business relationship, and breach of contract. Indeed, even before Plaintiffs filed their patent infringement claim, the parties represented to the Court several times that they had engaged in settlement negotiations, including mediation, and had been unable to resolve any of these claims. The speculative prospect of settling the multitude of remaining claims does not warrant bifurcation in this case.

The Court concludes that convenience, expedition, and economy will not be served by bifurcating the issue of patent infringement. "[E]ven if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay . . . ." Bunn-O-Matic, 195 F.R.D. at 620 (quoting Laitram Corp. v. Hewlett-Packard Co., 791 F. Supp. 113, 115 (E.D. La. 1992)). Under Defendants proposed bifurcation plan, the parties would continue to engage in discovery of the infringement issue but all other discovery would be stayed. The Court would construe the claims, and then the parties would try the infringement issue to a jury. After the

infringement issue had been tried, the parties would continue discovery on the remaining patent issues and the remaining 25-plus claims. A second trial on these claims would then ensue before a second jury. The Court finds that bifurcation of the infringement issue and the proposed stay of all other discovery would only add unnecessary delay to a case that has already been pending for more than two years.[2] "An unreasonable delay in a case's resolution amounts to prejudice to the one opposing separation. It is clearly not in the public interest." Id. at 624 (quoting Laitram, 791 F. Supp. at 116).

With respect to their third reason for bifurcation, Defendants contend that "[d]ue to the complexity of the issues involved and the confusion that will likely result should all patent issues be presented to a jury at once . . . , this case is ripe for bifurcation." Motion at 10 (DE 152). They argue that "a trial on both infringement and validity would require the jury to consider a large volume of technical information, including diagrams, schematics, engineering and product specifications, product brochures, models and exhibits on two major but different issues – validity and infringement." Id. at 11. According to Defendants, "[t]he jury would be on overload long before it even gets to the issue of willfulness, much less the complex damages evidence." Id. The Court disagrees with Defendants' assessment of the complexity of this patent infringement claim. This claim presents one of the more simple infringement cases that could be filed; it involves only one patent and one allegedly infringing product. The alleged infringement essentially consists of the method that a steel plate is attached to a steel tank bottom; it does not involve highly

---

[2] The possibility of an interlocutory appeal of the infringement issue was raised at the hearing on the bifurcation motion, which would result in considerably more delay.

7

complex technology that would be difficult to explain to a jury. Nor have Defendants proffered any facts showing that the damages evidence would be more complex than the average patent case; indeed, the damages evidence would appear to be even simpler. Not until the patent issued in November 2007, could there have been any infringement and, hence, any damages. Moreover, Defendants argued at the bifurcation hearing that they could not be liable for damages until they learned of the infringement in April 2008. Therefore, the time period in which Defendants could have sold allegedly infringing products and Plaintiffs could have incurred damages is relatively short. Moreover, any jury confusion that results from the complexity of issues can be remedied with "cautionary warnings, limiting instructions, special verdict forms, and other instructions to the jury." Id. at 621.

With respect to Defendants' final reason for bifurcation, the Court recognizes that "prejudice is the . . . most important consideration." Id. at 621. Defendants contend that if their proposed bifurcation is not granted the parties will be prejudiced in four ways. First, Defendants argue that if all issues were to be tried together, it would be necessary for them to move to disqualify opposing counsel because of a conflict of interest. According to Defendants, some of the attorneys representing Plaintiffs will be fact witnesses on validity, inequitable conduct, and inventorship issues. Aside from the prejudice that would result to Plaintiffs from a disqualification of their counsel, Defendants contend that not having to file the motion will save the parties and the Court the time and expense of litigating the motion. Plaintiffs respond that should such a disqualification motion be filed they will waive any prejudice that they may suffer as a result. Moreover, the time and the

expense of litigating the motion should be minimal. Defendants, therefore, have not demonstrated sufficient prejudice to justify bifurcation for this reason.

Defendants next contend that bifurcation will enable them to protect "their confidential business information, such as sales, pricing and marketing information, until such time as the financial and other proprietary information becomes relevant." Motion at 12 (DE 152). However, as Plaintiffs correctly note, the Court has already entered a Protective Order for Confidential Information, with an "attorney's eyes only" provision. According to Plaintiffs, the parties have already produced "all manner of confidential business information" and Plaintiffs have produced to Defendant, the exact type of sales, pricing, and marketing information under that Protective Order. In response, Defendants argue the Protective Order does not provide full and complete protection for its confidential business information because the Order provides that such confidential information can be used as evidence at trial. Hence, Defendants could thereafter utilize such information free of any confidentiality claim. The Protective Order, however, expressly provides that "[b]efore offering or otherwise causing designated [confidential] information to become evidence in any trial or evidentiary proceeding, the party wishing to use such information shall seek aid of the Court in formulating a reasonable procedure for preventing the disclosure of such information to persons not authorized hereunder to receive such information." The Court, therefore, finds that sufficient prejudice has not been shown to warrant bifurcation on this basis.

Defendants additionally contend that "Plaintiffs' allegation of patent infringement adversely affects Defendants because they are unsure of their rights." Motion at 13 (DE

152).  According to Defendants, until the infringement issue is decided there will be at least a slight doubt as to Defendants' right to make, use, sell and/or offer to sell their product.  They argue that "the longer delay until a ruling on infringement, the more prejudice Defendants will sustain."  Id. at 13.  The Court, however, agrees with Plaintiffs – "Defendants have not demonstrated any prejudice or uncertainty beyond that inherent in any litigation."  Response at 12 (DE 153).

Finally, Defendants contend that unless the infringement issue alone is tried first, they will be severely prejudiced by having to provide Plaintiffs legal opinions supporting their defense of willful infringement.  The Federal Circuit has explained what has become known as the "Quantum dilemma" – the choice between asserting an advice of counsel defense to a claim of wilful patent infringement and the resulting waiver of the attorney-client privilege and not asserting the defense and risking a finding of liability:

> Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege.  An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found.  Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera,* reveal that the defendant is indeed confronted with this dilemma.

Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643-44 (Fed. Cir. 1991).

Without citation to any authority, Plaintiffs contend that Defendants have waived an advice of counsel defense by not asserting it in their Answer to the Amended Complaint. Defendants, however, contend that until they depose Plaintiffs' corporate representative "there is no reason for [them] to choose whether or not to assert the 'advice of counsel' defense." Reply at 8 (DE 154). They state that after learning "the facts as to how Plaintiffs' infringement assertion is related to Defendants' current product, then a decision will be made on the advice of counsel defense," id., and, if appropriate, they will then seek leave to amend their Answer to assert the defense.

Although courts have frequently referred to "advice of counsel" as an affirmative defense, they have done so without analysis of whether it is a genuine affirmative defense that must be pled in a defendant's answer. The court in LG Philips LCD Co. v. Tatung Co., 243 F.R.D. 133 (D. Del. 2007), however, undertook such an analysis when considering whether the defendants in that case had waived the defense by not pleading it in their answers to the complaint. The court first noted that Federal Rule of Procedure 8(c) does not expressly enumerate "advice of counsel" as an affirmative defense, but that the rule contains a "catch-all provision," which requires a defendant to set forth in its responsive pleading "any other matter constituting an avoidance or affirmative defense." Id. at 136 (quoting Fed. R. Civ. P. 8(c)). In considering the issue, the court examined the substantive law of willful infringement, noting that "whether an accused infringer acted willfully is a question of fact to be determined in light of the totality of the circumstances concerning the alleged infringer's state of mind." Id. The court then stated:

> Reliance on the competent advice of counsel as a means of

11

> showing a party's good faith is but one factor relevant to this determination, and the Federal Circuit has not deemed the advice of counsel as dispositive of a plaintiff's claim of willfulness. A defense which merely negates some element of plaintiff's *prima facie* case is not truly an affirmative defense and need not be pleaded. The defense of advice of counsel does not entail admitting the allegations of the plaintiff's complaint and does not alone overcome a plaintiff's claim of willful infringement. Rather, the advice of counsel is only one of several factors to be considered in mitigation of a claim of willfulness.

Id. at 137 (internal citations and quotation marks omitted). The LG Phillips Court concluded that "advice of counsel is only an 'affirmative defense' in the sense that it must be introduced into the litigation by the accused infringer in mitigation of a claim of willfulness; it not a 'true' or 'mandatory' affirmative defense under Rule 8(c) that must be pled in the answer." Id.

This Court finds the reasoning of LG Phillips persuasive and concludes that Defendants here have not waived the advice of counsel defense by failing to plead it in their answer. Moreover, even were advice of counsel an affirmative defense within the meaning of Rule 8(c), Defendants could seek leave of court to amend their answer. See Hargett v. Valley Fed. Sav. Bank, 60 F.3d 754, 762-63 (11th Cir. 1995) (rejecting argument that affirmative defense was waived where not included in answer because court has "extensive discretion to decide whether to grant leave to amend after the time for amendment as a matter of course has passed."). Nonetheless, the question of whether the patent infringement claim should be bifurcated because of the alleged "Quantum dilemma" remains.

The Court concludes that Defendants have not met their burden of showing that the

12

prejudice due to the "Quantum dilemma" warrants bifurcation at this time. In their Motion, Defendants merely state that they "will be severely prejudiced by the unnecessary disclosure of attorney-client privileged information. Specifically, it would be particularly prejudicial to Defendants' preparation of their defense on infringement if they were compelled to turn over to Plaintiffs the legal opinions supporting their defense on willfulness." Motion at 12 (DE 152). As one district court recently observed in declining to bifurcate, notwithstanding the alleged prejudice of asserting an advice of counsel defense:

> [The moving party merely] raises the spectre [sic] of the eventual choice it *might* have to make, regarding whether to waive its attorney-client privilege to defend against a charge of willful infringement. In a nutshell, [the moving party] asks this Court order bifurcation now so that it does not have to make this choice "prematurely."
>
> Absent from this argument are facts and law in support. As to the facts . . . [the moving party] has offered none[;] this Court has no specific information about the communications in question. . . . It is possible that, absent bifurcation, [the moving party] may face a difficult strategic choice regarding waiver of privilege. Yet [the moving party] has given this Court nothing but speculation to show that such a difficult choice is even likely, no less inevitable. Moreover, the critical rationale underlying Quantum and Rule 42(b) are the avoidance of prejudice, not protection against difficult choices. This Court finds nothing in the record before it that demonstrates that prejudice to [the moving party] is probable absent bifurcation. As [the non-moving party] observes, [the moving party] has not proposed an *in camera* review of the communication in question.

Codman v. Shurtleff, Inc. Integra Lifesciences Corp., No. 06-2414 (SDW), 2008 WL 2242439, at *2 (D.N.J. May 29, 2008). Similarly, Defendants here have proffered no facts

13

demonstrating that they will suffer prejudice if the issue of patent infringement in not tried first. They have not identified the number of legal opinions (or even indicated clearly that such legal opinions exist) or described them in any manner. And they have not offered to submit any legal opinions to the Court for an *in camera* inspection. The Court, therefore, does not have sufficient information on which to determine whether Defendants, in fact, face a "Quantum dilemma."

Defendants contend that they will not make a decision as to whether they will assert an advice of counsel defense until such time as they have deposed the Plaintiffs' corporate representative(s). The Court recognizes that "the question of timing – of when to assert the advice of counsel defense and bear the burden of the attendant waiver of the attorney-client privilege that follows – becomes crucial to an accused infringer. This concern must, of course, be counter-balanced by the concern of fairness to the party asserting a claim for willful infringement because . . . that party becomes entitled to timely discovery concerning the advice of counsel." LG Phillips, 243 F.R.D. at 136. A defendant, however, does not have "an unfettered right to determine when to raise the defense." Id. at 137. Courts, therefore, have required defendants to choose whether to assert such a defense by a date certain. See, e.g., id. at 139. Accordingly, on or before March 13, 2009, Defendants shall notify Plaintiffs and the Court by letter whether they intend to assert an advice of counsel defense to Plaintiffs' claim of willful infringement. If Defendants choose to assert such a defense, they shall submit the legal opinions to the Court for an *in camera* inspection so that the Court may determine whether the "Quantum dilemma" actually exists in this case.

Although Defendants have failed to demonstrate that the "Quantum dilemma" requires bifurcation in this case, the Court does recognizes that the attorney-client privilege is "the oldest confidential communications privilege known to the common law" and is "deemed worthy of maximum protection." Haines v. Ligget Group, Inc., 975 F. 2d 81, 89-90 (3rd Cir. 1992); see also Unigene Labs, Inc. v. Apotex, Inc., No. C 07-80218 SI, 2007 WL 2972931, at * 3 (N.D. Cal. Oct. 10, 2007) ("[c]ommunications within the scope of the [attorney-client] privilege are zealously protected") (quoting Charles Alan Wright, Arthur R. Miller & Richard Marcus, Federal Practice and Procedure § 2017 (2007)). Because the the assertion of an advice of counsel defense results in such a critical waiver, "it is not uncommon in willful infringement cases for a court to stay discovery of attorney opinions relevant to the willfulness defense." Flex Prods., Inc. v. BASF Corp., No. 97-CV-60233-AA, 1998 WL 425475, 47 U.S.P.Q 2d 1380, 1382 (E.D. Mich. 1998) (court delayed discovery of accused infringer's opinions of counsel until two weeks before the discovery cut-off); see also Plasmanet, Inc. v. Apax Partners, Inc., No. 02 Civ.9290 BSJ THK, 2003 WL 21800981, at *3 (S.D.N.Y. Aug. 5, 2003) (delaying discovery of advice of counsel defense until all other discovery had been taken and summary judgments resolved); Kos Pharmaceuticals, Inc. v. Barr Labs, Inc., 218 F.R.D. 387, 394-95 (S.D.N.Y. 2003) (delaying discovery of legal opinions obtained by defendant until after jury decided patent infringement issue, then permitting discovery on the legal opinions and resuming trial on willfulness); F & G Scrolling Mouse, L.L.C. v. IBM Corp., 190 F.R.D. 385, 395 (M.D.N.C. 1999) (denying bifurcation, but ordering discovery on willfulness to be staged at the end of discovery); Bausch & Lomb, Inc. v. Alcon Labs., Inc., 173 F.R.D. 367, 378-79 (W.D.N.Y.

1995) (ordering that accused infringer need not identify whether it was relying on advice of counsel and simultaneously produce attorney opinions until one month before the discovery cut-off).

Similarly, this Court will delay discovery of any legal opinions relating to the advice of counsel defense, at least until Defendants have notified Plaintiff and the Court whether they will assert an advice of counsel defense to the issue of willfulness and the Court, if necessary, has examined the legal opinions *in camera*. Thereafter, the Court will set a time for discovery of this defense. The Court appreciates that Plaintiffs may suffer some prejudice by delaying discovery of the advice of counsel defense, including the need to re-depose some witnesses. But Plaintiffs prejudice in re-deposing witnesses is outweighed by Defendants' prejudice in waiving the attorney-client privilege should they choose to assert the defense.

Although the Court has declined to bifurcate this case and try the issue of patent infringement first, because of the number of parties and the number of claims, cross-claims, and counterclaims, the Court recognizes that the trial of this case is likely to be unwieldy. Accordingly, the Court leaves open the question of whether the trial should be conducted in stages or whether it will be necessary to require that evidence be heard in a particular order. The Court will explore these possibilities with the parties at a pretrial conference to be set by separate order after the completion of discovery.

In sum, this case has no extenuating circumstances that warrant trying the infringement issue separately and first. Accordingly, Defendants' Motion for Bifurcation (DE 152) and their request for a stay of discovery is DENIED, except as to discovery on

legal opinions that may support an advice of counsel defense as set forth above.

DONE AND ORDERED in Fort Lauderdale, Florida, this 22nd day of December 2008.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record